SAMUEL GOLDBERG et al., Plaintiffs, *v.* JOSEPH SIEGEL et al., Defendants.

Supreme Court, Special Term, Queens County, February 12, 1944.

*Albert W. Fribourg* for plaintiffs.

*Furst, Schwartz, Schwager & Landau* for defendants.

CUFF, J. This is an action for an injunction wherein the plaintiffs claim that a covenant in their written lease protects them against competing tenants in the building 116-16 Liberty Avenue, Brooklyn, N. Y., selling merchandise and wares in which the plaintiffs traffic. That covenant follows: " The landlord agrees not to rent any portion of the building &ast; &ast; &ast; for the sale of children's specialties, women's wear such as hosiery and underwear or infants' shoes ". There is no dis-

pute about the fact that defendants are prosecuting the line of business mentioned in the covenant.

At the time the lease was executed, " the     day of March, 1941," the owner was one L'Ecluse. By its terms the lease expires March 31, 1946. On June 23, 1943, while the lease was in operation, L'Ecluse entered into a contract to sell the building and land to the defendants. At the time of signing of the contract defendant Joseph Siegel was present, but not defendant Rose Siegel. The title closed July 21, 1943, at which time both defendants attended.

Mr. Joseph Kelly, an attorney, who handled the closing for his law firm, testified that on June 28, 1943, when he informed Mr. David Deutsch, an attorney who was representing the defendants in their capacity of purchasers, that the restrictive clause existed, Mr. Deutsch replied that " nevertheless his clients would take the title ". A letter dated July 1, 1943, written by Mr. Kelly to Mr. Deutsch, confirmed that conversation. Mr. Kelly further said that Mr. Deutsch observed that the covenant restricted " leasing " and that his client had no intention of renting.

Mr. Deutsch's testimony was in substance the same as Mr. Kelly's. He testified that he told Mr. Kelly that his client, Mr. Siegel, had previously informed him about the restriction. He admitted receiving the July 1st letter. He added that at the time when the contract was signed, June 23, 1943, there was no talk about the restrictive covenant. He said that he was unaware of it at that time.

The facts are not at variance. There was a " building known as 116–16 Liberty Avenue ". L'Ecluse, the then owner in March, 1941, rented one of the stores " 116–14 Liberty Avenue " to plaintiffs " for children's specialties and women's wear such as hosiery and underwear and infants' shoes " for a term of five years. The landlord who made that lease conveyed to defendants the " building known as 116–16 Liberty Avenue " by a bona fide sale. The lease was not recorded.

The evidence is that defendants learned of the existence of the restrictive covenant between the time when they contracted to buy the property, June 23, 1941, and the date when they accepted title, July 21, 1941. They, therefore, were aware of the existence of the restrictive covenant before they became the owners of the premises.

As soon as they were possessed of the buildings the defendants put in and offered for sale in one of the stores merchandise forbidden to be sold on the premises by the covenant in the lease.

The defendants maintain that because they were ignorant of

the presence of the restriction in the lease before they signed the contract to buy the premises, that the covenant against selling certain merchandise is not binding upon them; that the covenant was personal to the contracting parties and its limitations were not inherited by them as purchasers of the property.

The agreement by its nature was not personal. Any doubt of its character is removed by one of the final clauses of the lease, whereby the parties mutually agree that it shall be binding, among others, on their successors.

" Covenants of the character here involved may be enforced against the grantee notwithstanding that they are not contained in the deed where the grantee *took title* with knowledge of their existence ", said DALY, J. (*Goldberg* v. *Siegel*, N. Y. L. J., Nov. 6, 1943, p. 1240, col. 3; italics supplied), in denying the motion for a temporary injunction herein, citing *Rubel Bros., Inc.*, v. *Dumont Coal & Ice Co., Inc.* (200 App. Div. 135) and *Hodge* v. *Sloan* (107 N. Y. 244, 250). To these cases could be added many others where the courts have uniformly held that even if the restriction were personal if the buyer " took title " with knowledge he is bound. (*Doniger* v. *St. Marks Holding Corp.*, N. Y. L. J., Sept. 15, 1923, p. 1819, Special Term, Kings County, HAGARTY, J.)

The *Rubel Bros., Inc.*, case uses the expression " who *took title* with full knowledge " (italics supplied), indicating that the knowledge after contract but before closing is effective to bind the buyer. *Hodge* v. *Sloan* (107 N. Y. 244, 250) treats with that phase and gives the reason: " The question in equity being * * * not whether the covenant ran with the land, but whether a party shall be permitted to use the land inconsistently with the contract entered into by his vendor, and with notice of which he purchased ".

The theory evolved by defendants, that upon executing the contract of purchase they became equitable owners of the property as of that time and being without knowledge *then,* they must be classed as having taken the title uninformed of the restrictive covenant, strains the legal theories they propound, correct in their isolated realms, to the point where an equitable fiction, established and nurtured to frustrate fraud and destroy inequity, becomes a thornlike instrument of injustice itself.

The fact that defendants are not renting the store but are themselves using it is no escape from the inhibitions of the covenant. To tolerate such an avoidance of the effects of plain language would be to invite nullification of honest agreements made among men. *Peoples Trust Co.* v. *Schultz Novelty and Sporting Goods Co.* (244 N. Y. 14) holds that a covenant not to

rent is the equivalent of a covenant not to use (see note, 12 Corn. L. Q. 392).

Judgment in favor of plaintiffs with costs and disbursements will be entered. There will be no need for findings of facts and conclusions of law as both are contained in this decision as fully as the issues require.