**NEIMAN–MARCUS COMPANY et al.,**
**Appellants,**

**v.**

**Louis J. HEXTER et al., Appellees.**

**No. 16850.**

Court of Civil Appeals of Texas.

Dallas.

Feb. 3, 1967.

Rehearing Denied March 10, 1967.

Sol Goodell, of Thompson, Knight, Simmons & Bullion, J. Richard Gowan, of Johnson, Bromberg, Leeds & Riggs, Dallas, for appellants.

Alfred Sallinger and H. Louis Nichols, of Saner, Jack, Sallinger & Nichols, Dallas, for appellees.

* Suggestion is made of the death of Sam Lobello. His estate has been substituted by order of this court on the voluntary

BATEMAN, Justice.

The appellees Louis J. Hexter, Sam Lobello, Sam Lobello, Jr. and Ruby D. Hexter brought this suit for declaratory judgment against the appellants Neiman-Marcus Company and Raymond D. Nasher. At the conclusion of a nonjury trial the court rendered the judgment requested by appellees.*

In 1947 appellees, owners of a long term lease of several acres in the City of University Park, Dallas County, Texas, developed the tract as a shopping center known as Varsity Village, and later as Preston Center. In 1948 appellees subleased to Neiman-Marcus Company (herein called Neiman-Marcus) a part thereof on which Neiman-Marcus constructed a store building and maintained a store for approximately 15 years. This sublease was for a term of 25 years, with a 25-year renewal option. On July 20, 1965 Neiman-Marcus assigned its rights under this sublease, and its interest in the store building, to the appellant Nasher, retaining vendor's and deed of trust liens thereon to secure payment of part of the purchase price. The assignment contained the following provision:

"Nasher further expressly agrees, covenants and warrants that, without the prior written consent of Neiman-Marcus, he will not prior to July 20, 1985 sell, assign, transfer, lease or sublease the Preston Center Store Building, or the demised premises, or any part of either, to Bonwit-Teller, Bergdorf-Goodman, Lord & Taylor, or any other comparable specialty store dealing in luxury merchandise, or to Lou Lattimore, Inc. or Marie Leavell Specialty Shop, which are two stores currently dealing in luxury women's apparel and accessories in Dallas, Texas."

The record also shows that on May 3, 1963 the appellant Nasher, who had developed NorthPark Shopping Center on Northwest Highway, slightly less than two miles from the property in question, leased

appearance of Sam Lobello, Jr., independent executor of said estate.

store premises therein to Neiman-Marcus, which opened and operated a retail store therein for the sale of luxury merchandise. That lease prohibited Neiman-Marcus from managing, operating or conducting or having any interest in any retail store within five miles of the NorthPark Shopping Center, except that Neiman-Marcus might continue to operate its store located in Preston Center, provided it was not operated under the name of Neiman-Marcus or any comparable name, or as "a typical Neiman-Marcus store," or for the sale of merchandise within the price range of that being sold from its NorthPark store.

■ The trial court declared the above quoted provision in the assignment to be void and unenforceable as being in violation of the anti-trust laws of Texas, Vernon's Ann.Civ.St. Art. 7426, and the appellant Neiman-Marcus, by its first point of error on appeal, challenges the correctness of this declaration.

Although the lease between Nasher and Neiman-Marcus covering the NorthPark premises was made in May 1963, and the assignment to Nasher of the Preston Center lease in July 1965, Nasher testified that they were parts of one transaction. Appellees do not contend that the leasing of the NorthPark premises to Neiman-Marcus, standing alone, would violate the Texas anti-trust laws, but argue that the effect of that transaction, coupled with the restrictive assignment of the Preston Center lease to Nasher, was calculated to create a monopoly and eliminate competition with the Neiman-Marcus store in NorthPark Shopping Center within a radius of five miles thereof, which appellees say comprises an area of 75 to 80 square miles. We do not agree with this contention of appellees.

Neiman-Marcus' lease covering premises in Varsity Village, or Preston Center, did not obligate it to build a building thereon or to occupy it or to conduct any particular kind or quality of business therein. Moreover, it accorded to Neiman-Marcus the right to assign the lease and be relieved of all obligations thereunder. It did not provide for a rental based on a percentage of sales but only a fixed ground rent.

As the owner of the Preston Center lease, Neiman-Marcus had the right to require the restriction contained therein as a condition to its assignment of the lease to Nasher. In doing so, it was only exercising "one of the inherent rights incident to the ownership of real property," which was "within the well-recognized exception to the general rule" which might render such agreement or combination unlawful under the anti-trust statutes. Celli & Del Papa v. Galveston Brewing Co., Tex.Comm.App., 227 S.W. 941, 942. The same may be said of Nasher's right to require the restrictions contained in his lease to Neiman-Marcus covering the NorthPark store.

■ We think this court correctly stated the applicable rule in Weinkrantz v. Southwestern Life Ins. Co., Tex.Civ.App., 264 S.W. 550, no wr. hist., as follows:

> "The right of a lessor to control the use of his premises is undisputed. He may insert such conditions in the lease contract with reference thereto as he pleases, and it is not for the lessee to say that they are unreasonable; thus covenants not to carry on a particular business or not to carry on any business except the one named in the lease contract is binding and may be enforced."

See also State v. Gulf Refining Co., Tex. Civ.App., 279 S.W. 526, wr. ref.; Schnitzer v. Southwest Shoe Corp., Tex.Sup.1963, 364 S.W.2d 373; and Weil v. Lewis (Ann) Shops, Inc., Tex.Civ.App., 281 S.W.2d 651, wr. ref.; 35 Tex.Jur.2d, LANDLORD and TENANT, § 57, p. 545; Redland Fruit Co. v. Sargent, 51 Tex.Civ.App. 619, 113 S.W. 330, no wr. hist.

If the combination of the restrictions contained in the two instruments creates a monopoly or is in restraint of trade (and we do not hold that it is), such is in our view a fortuitous circumstance resulting from contracts between the appellants which

they had a legal right to make and concerning which neither of them is complaining.

Appellant Neiman-Marcus' first point of error is sustained.

The trial court also declared in its judgment that certain restrictive provisions contained in Section XVII of the sublease from appellees to Neiman-Marcus were personal covenants to Neiman-Marcus and no longer in force and effect or binding upon appellees since Neiman-Marcus no longer operated its store upon the leased premises. Neiman-Marcus by its second point of error on appeal, and Nasher by his only point of error, attack this part of the judgment contending that, except as to certain parts hereafter noted, the covenants in question run with the land and remain in force and effect for the life of the sublease.

The covenants in question are contained in Paragraph XVII of the sublease and are as follows:

"Lessor covenants and agrees that during the life of this lease and any extension thereof no property in Varsity Village not included in the premises hereby leased will be leased by it for any of the following uses, to wit: Saloon, package store, fish market, drive-in restaurant, hamburger stand (where food and drink are served in automobiles), manufacturing, processing, dwelling or apartment purposes, or, without Lessee's written approval, no apparel mercantile establishment from outside the City of Dallas comparable to such apparel stores as Sak's Fifth Avenue, Bonwit-Teller, Peck & Peck, or Bullock's Wilshire, and no specialty store which is either a subsidiary or affiliate of any department store or specialty store now located in Dallas, or owned or controlled by any department store or specialty store now located in Dallas during the life of this lease, or any extension thereof, without Lessee's written consent. By 'specialty store' as above used, is meant any store in which at any time apparel sales exceed thirty per cent (30%) per annum of its total sales. It is not intended by any of the foregoing provisions to restrict the sale by any Lessee of any part of Varsity Village of men's and boys' clothing in Varsity Village. Lessor further agrees that it will exercise reasonable diligence not to lease any property in Varsity Village to any person theretofore in the employ of Lessee, or to any party or concern in which such person has an investment or interest as partner, stockholder, lender, officer, director, employee, or otherwise, for the purpose of conducting the business of selling any character of goods, wares and merchandise which may then be handled by Lessee within a period of ten (10) years from and after the termination of said person's employment by Lessee. Lessors further covenant and agree that they will not allow any store to operate in Varsity Village for any purpose whatsoever having the name of Neiman and/or Marcus, or any combination of Neiman and Marcus; and will exercise reasonable diligence to prevent any person or persons having the name of Neiman or Marcus, or any combination thereof, to operate such store by means of an investment or interest as partner, stockholder, lender, officer, director, employee or otherwise during the life of this lease or any extension thereof. No lease covering property in Varsity Village not included in this lease will be executed by Lessor unless such lease contains the aforesaid use restrictions without the written consent of Lessee first had and obtained."

These restrictions may be said to fall into four parts or categories. In what we shall call Part I the appellees bound themselves not to lease any of their remaining property for a saloon, package store, fish market, etc. Part II binds appellees not to lease their remaining land to certain types of mercantile establishment. In Part III they agree to use reasonable diligence not to lease any of such remaining property to former employees of Neiman-Marcus, and

Part IV bound appellees not to allow any store in Preston Center with the name of Neiman-Marcus or either of such names or any combination thereof. Both of the appellants in their briefs agree that the restrictions contained in Parts III and IV are of no importance to them and, so far as they are concerned, may be by agreement deleted from the sublease. They contend vigorously, however, that the restrictions contained in Parts I and II are important, were bargained and paid for, and are covenants running with the land which may be enforced by Nasher or his assigns. We agree with appellants.

■ Our first duty is to determine the intention of the parties, and in doing so we shall follow the rule set out in the early case of Howeth v. Anderson (1860), 25 Tex. 557, 572, wherein the Supreme Court said:

"Leases are construed, like other written agreements, so as to give effect to the intention of the parties. To arrive at the intention, regard is to be had to the situation of the parties, the subject matter of the agreement, the object which the parties had in view at the time, and intended to accomplish. A construction should be avoided if it can be done consistently with the tenor of the agreement, which would be unreasonable or unequal; and that construction which is most obviously just is to be favored, as most in accordance with the presumed intention of the parties."

Other parts of the contract are helpful in this respect. Section XV accords to the "Lessee" the absolute right to assign his leasehold estate in its entirety or for any portion of the unexpired term thereof. Section XIX provides:

"Wherever the word 'Lessor' appears in this agreement it is agreed to include not only the Lessors, but their heirs, assigns, administrators and successors. Similarly, wherever the word 'Lessee' appears in this agreement, it is agreed to include not only the Lessee, but its successors and assigns."

We think we should also take into consideration the facts that the sublease does not provide for a rental based even in part on a percentage of sales, but only for a fixed ground rent payable semi-annually; that it does not obligate the lessee to conduct any business whatsoever on the premises or to continue to occupy or use the same in any respect; and that when Neiman-Marcus assigned the sublease to Nasher it retained vendor's and deed of trust liens on the leasehold estate to secure payment of the balance of the purchase price. Also entitled to consideration is the fact that appellees imposed similar restrictions upon themselves in leases given by them to other tenants in the Preston Center.

If appellees had intended any of these restrictions to be personal to Neiman-Marcus alone, it seems to us that when they expressly gave Neiman-Marcus the right to assign its interest in the sublease appellees would have insisted upon specifying that in the event of such assignment the restrictions in question would be no longer in effect or binding upon them. Instead, however, they stipulated that the restrictions should be effective "during the life of this lease, or any extension thereof."

■ Giving effect to all of these considerations, we conclude that the restrictive covenants contained in Parts I and II were not intended to be and are not personal, but run with the land and are enforceable at the behest of Nasher or any subsequent owner of the sublease. Cauble v. Hanson, Tex.Civ.App., 224 S.W. 922, affirmed Tex. Com.App., 249 S.W. 175; Moore v. Kirgan, Tex.Civ.App., 250 S.W.2d 759, no wr. hist.; Fort Worth Driving Club v. Fort Worth Fair Ass'n, 103 Tex. 24, 122 S.W. 254; Goldberg v. Siegel, 182 Misc. 1068, 47 N.Y. S.2d 678; Norman v. Wells, (N.Y.Ct. of App.), 17 Wend. 136. Neiman-Marcus' second point of error and Nasher's only point of error are therefore sustained.

■ By its third point of error on appeal Neiman-Marcus says the trial court erred in not dismissing this suit for want of a

necessary and indispensable party, Connecticut General Life Insurance Company. The record shows that on November 28, 1960 appellees assigned to that Company their rights under the lease to Neiman-Marcus, as well as other leases, to secure their note for $200,000. Counsel for Neiman-Marcus announced ready for trial without raising this question, and did not raise it until the filing of its motion for new trial. He argues on appeal that, since the assignment contained appellees' agreement "not to modify, extend or in any way alter the terms of said lease or accept a surrender thereof," Connecticut General Life Insurance Company was given a direct interest in the sublease and was, therefore, an indispensable party to the suit.

This suit for declaratory judgment was brought pursuant to Vernon's Ann.Civ.St. Art. 2524–1. Section 11 of that statute provides:

"When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding."

While Connecticut General Life Insurance Company might properly have been joined as a party to this suit, it was not an indispensable party and it was not fundamental error for the court to proceed to trial and judgment in its absence. Petroleum Anchor Equipment, Inc. v. Tyra, Tex. Sup.1966, 406 S.W.2d 891.

Neiman-Marcus' third point of error is overruled.

█ In view of the agreement of appellants that the restrictive covenants in the sublease concerning leasing property in Varsity Village to former employees of Neiman-Marcus and not allowing any other store to operate in Varsity Village having the name of Neiman and/or Marcus, or any combination of such names, etc., without the written consent of Lessee, may be deleted from such sublease, that part of

the judgment of the trial court which declares such last named provisions to be no longer in force and effect or binding upon appellees, is affirmed. The remainder of the judgment is reversed and here rendered declaring that the restrictions in the assignment of the sublease from Neiman-Marcus to Nasher do not violate the antitrust laws of Texas, and that the restrictions contained in Section XVII of the sublease prohibiting appellees from leasing their remaining property in Varsity Village, not included in the sublease, for use as a saloon, package store, fish market, etc. or as an apparel store such as Sak's Fifth Avenue, Bonwit-Teller, etc. or as a specialty store which is either a subsidiary or affiliate of a Dallas department or specialty store, are not personal covenants to Neiman-Marcus but are covenants running with the land and still in force and effect.

Costs in the trial court and in this court will be taxed against appellees.

Affirmed in part and reversed and rendered in part.