**Solomon J. KARAM, Jr., d/b/a Consolidated Produce Co. and Bushel Basket, Appellant,**

v.

**H. E. BUTT GROCERY COMPANY et al., Appellees.**

No. 15397.

Court of Civil Appeals of Texas, San Antonio.

June 25, 1975.

Rehearing Denied Oct. 1, 1975.

King, Joseph, Baucum & Karam, San Antonio, for appellant.

Matthews, Nowlin, Macfarlane & Barrett, John D. Fisch, Foster, Lewis, Langley, Gardner & Banack, William T. Armstrong, III, San Antonio, for appellees.

CADENA, Justice.

Plaintiff, Solomon J. Karam, Jr., d/b/a Consolidated Produce Co. and Bushel Basket, filed suit against defendants, H. E. Butt Grocery Company (here called "HEB") and Quincy Lee (here referred to as "Lee"), seeking a declaratory judgment to the effect that certain restrictive covenants were not applicable to property which he occupied as tenant.

Plaintiff appeals from a summary judgment holding the restrictions enforceable against him.

The land involved may be generally described as lots 8 and 9, N. C. B. 12179, H. E. B.–Walzem Subdivision, in San Antonio. The land is located within a tract bounded by U. S. Highway 81, Interstate Highway 35 and Walzem Road. On December 11, 1970, HEB, which operates a chain of grocery stores, owned approximately 8.7 acres of the land, on which it constructed one of its grocery stores. Lee, a land developer, owned about 23 acres which were located generally to the east of the HEB tract. Lee proposed to build a building on his land and lease the building to Woolco Department Stores.

HEB and Lee desired that the HEB store and the Woolco building, when completed, would constitute an integrated shopping center. In furtherance of this agreement, HEB conveyed to Lee approximately 6.3 acres of the 8.7 acre HEB land in exchange for the conveyance to HEB by Lee of approximately 1.15 acres of the 23 acres owned by Lee, and the payment of $130,-000.00 to HEB by Lee. The conveyances took place on December 11, 1970, and as part of the overall plan to establish an integrated shopping center, HEB and Lee, on the same date, executed a "development and operating agreement." This agreement referred to the exchange of lands, describing such exchange as taking place simultaneously with the execution of the development agreement. The agreement referred to the fact that Lee and HEB desired to establish various controls and guide lines in respect to the construction, development, maintenance and operation of the shopping center, and to exchange with each other certain easements in and to, over and under and across the entire premises and in and to the common facilities so as to facilitate the use of the entire premises (consisting of the entire tract of approximately 31.7 acres) as an integrated shopping center.

As might be expected, the agreement is rather detailed, but the portions relevant to a disposition of this case may be summarized as follows:

(1). Lee agreed not to lease or permit to be occupied any part of the shopping center or premises on any other property owned by Lee within the 31.7 acre tract for the sale for off-premises consumption of groceries, meat, produce, dairy products, bakery products or frozen foods. This provision, of course, was designed to insulate HEB from competition.

(2). So long as Woolco occupies space in the shopping center, no space in the shopping center with a floor area in excess of 10,000 feet will be leased to or occupied by any person unless such lease is consented to in writing by Woolco, and no other space in the center shall be used or occupied as, or in connection with, a variety store, junior department store, department store or discount store.

(3). The restrictions on use are made incident to and a primary consideration of the purchase and sale of portions of the entire HEB and Lee properties, "and incident to the Woolco lease, and shall be enforceable by the parties hereto, their successors and assigns . . . and by Woolco, its successors, sublessees and assigns."

(4). The agreement is made partly for the purpose of inducing Woolco to enter into a lease of premises on the Lee parcel, and is intended to insure to Woolco's benefit. The agreement may not be altered, amended or rescinded without Woolco's written consent, and in event of default by HEB, Woolco will be entitled to enforce the agreement.

(5). The restrictive covenants shall constitute covenants running with the land and shall be binding upon, and inure to the benefit of, Lee, HEB, Woolco, their successors, sublessees and assigns.

This agreement, despite its references to Woolco, was signed only by Lee and HEB.

On the same date, December 11, 1970, Lee and Woolco entered into a lease agreement for a period ending January 31, 1992. This lease covered certain premises on the Lee parcel. The lease instrument referred to the operating and development agreement entered into between Lee and HEB and contained a restrictive covenant substantially similar to that contained in the agreement between Lee and HEB to protect Woolco from competition. The lease further gives Woolco the right to prevent any change in the Lee-HEB agreement and obligates Lee to exercise diligence in enforcing such agreement.

On January 21, 1974, Lee conveyed to B–J Properties, a joint venture composed of Mitchell Battros and Robert C. Jones, the east 1.97 acres of lot 8, consisting of a tract approximately 150′ by 571′ located in that portion of the shopping center owned by Lee. This conveyance was in performance of a contract between Lee and Battros executed July 16, 1973.

In December, 1973, Battros leased to plaintiff an area, consisting of 3,600 square feet, located within the land conveyed by Lee to B–J Properties.

It is clear from the record that the business which plaintiff proposes to conduct on the premises leased to him would be in direct competition with HEB and would involve the sale of products enumerated in the restriction intended to protect HEB.

In its first point plaintiff contends that the trial court erred in holding that the restrictive covenant was "unambiguous, valid and enforceable." By its second point plaintiff contends that the restrictive covenant violates our anti-trust laws. In his brief, plaintiff presents no argument tending to show that the agreement was ambiguous, and it is clear from the plaintiff's brief that the contention that the agreement is invalid and unenforceable is based entirely on the assertion that it violates our anti-trust laws. We, therefore, need only decide whether the agreement in question is of the type rendered unenforceable by our anti-trust legislation.

According to plaintiff, the transaction in question creates a prohibited "trust" within the meaning of § 15.02, Tex.Bus. & Comm. Code Ann. (1968). In particular, plaintiff relies on § 15.02(b)(1), (3)(A), which defines a trust as a "combination of capital, skill or acts by two or more persons" which restricts, or tends to restrict, "trade, commerce, . . . or the free pursuit of a lawful business;" or which prevents or lessens competition in the "manufacture, transportation, sale, or purchase of tangible personal property."

■ Our anti-trust statutes, like those in other jurisdictions, are, on their face, extremely broad and far-reaching. But the courts have generally limited the scope of such legislation. *Standard Oil Co. v. U. S.*, 221 U.S. 1, 31 S.Ct. 502, 55 L.Ed. 619 (1911); 54 Am.Jur.2d, Monopolies, Restraints of Trade, and Unfair Trade Practices § 457 (1971). With respect to the type of agreement before us, the courts are generally

agreed that (1) the seller or lessor of land may, by a reasonably limited restrictive covenant, agree not to use, or allow his property to be used by others, in a way which would result in competition with his grantee or lessee; and (2) a buyer may agree not to use the property which he has purchased in a way which will compete with the seller or lessen the usefulness or impair the value of the seller's remaining land. 14 Williston, Contracts § 1642, pp. 138–39 (3d ed., Jaeger, 1972). The Texas cases recognize the same limitations on the scope of such statutes. *Schnitzer v. Southwest Shoe Corporation,* 364 S.W.2d 373, 374–75 (Tex. 1963); *Neiman-Marcus Co. v. Hexter,* 412 S.W.2d 915 (Tex.Civ.App.—Dallas 1967, writ ref'd n. r. e.); *Anderson v. Rowland,* 44 S.W. 911 (Tex.Civ.App.1898, no writ).

■ The covenant of which plaintiff complains is an agreement by a grantor, Lee, not to use his remaining property, or allow such property to be used, in a manner which would create competition with his grantee, HEB. Under the rules referred to in the immediately preceding paragraph, such an agreement is valid and enforceable. Plaintiff, however, insists that the agreement is an invalid restraint on trade because the agreement between Lee and HEB attempts to "lock in" a third party, Woolco. In support of this contention, plaintiff relies principally on *Schnitzer v. Southwest Shoe Corporation, supra,* and *Kroger Company v. J. Weingarten, Inc.,* 380 S.W.2d 145 (Tex. Civ.App.—Houston 1964, writ ref'd n. r. e.).

In *Schnitzer,* A and B, who separately owned adjoining buildings, decided to operate their properties as an integrated shopping center. A leased his premises to C, a shoe company. The lease instrument gave C the exclusive right to sell shoes in A's building and in the buildings of other owners who ratified the exclusive shoe-selling agreement. B ratified the provision by signing the lease instrument, but subsequently leased space in his building to X, who thereafter sub-leased to Y, who sold shoes as part of his business. The Supreme Court held that the restrictive covenant in the lease was unenforceable as an invalid restraint on trade.

The facts in *Kroger* may be stated in simplified form as follows: A leased certain premises owned by him to B by an instrument containing a provision to the effect that the lessor would not engage in a business competing with B within a circle having a radius of two miles from the leased premises, and would impose similar restrictions on all property then owned by A or which might thereafter be acquired by A, within such area. On the same date, a separate agreement was executed by A, B, C and D. C and D were owners of other land within a radius of two miles from the premises leased by A to B. Under this agreement, A, C and D agreed to restrict which they, or either of them, then owned or might thereafter acquire within the area so that such property would not be used in competition with B. The court held the agreement constituted an unlawful trust to prevent competition.

Neither *Schnitzer* nor *Kroger* is in point. The exceptions relating to restrictive covenants made as incidents of transactions involving the transfer of interests in land are applicable only where the use-limiting promise is made by either the transferor or transferee and relates to land owned by the covenantor or to land in which he has an interest. The vice in both *Schnitzer* and *Kroger* lay in the fact that the covenant in question attempted to restrict use of land owned by one who was neither a transferor, as grantor or lessor, or transferee, as grantee or lessee, in the transaction to which the restriction was incidental. In the case before us, the restrictions were placed on land belonging to Lee and HEB, each of which both transferor and transferee of the different parcels exchanged by them. Insofar as the restriction of which plaintiff here complains, it was a restriction on the remaining land of Lee and ran in favor of his grantee.

The fact that a third party, Woolco, was mentioned in the agreement is irrelevant.

Even if Woolco had not been mentioned in the agreement, it would have been bound as lessee of Lee, the covenantor.

This case, therefore, falls squarely within the holding in *Neiman-Marcus Co. v. Hexter, supra*, in which the restrictive covenant was between lessor lessee and affected only premises owned or controlled by them. Plaintiff argues that the Dallas Court of Civil Appeals, in upholding the restrictions, failed "to attach any importance to Anti-Trust Statutes." The court specifically considered and rejected a challenge based on the anti-trust legislation and, in our opinion, correctly held that the arrangement came within one of the exceptions to the statutes which have, as already pointed out, been recognized by the courts, including our Supreme Court in *Schnitzer*.

Plaintiff does not contend that the agreement was unreasonable as to either time or area. His challenge to the judgment below is based exclusively on the argument that the agreement violated our antitrust statutes. He asserts no other reason as support for the contention that the agreement is not enforceable against him.

The judgment of the trial court is affirmed.