NO. 07-01-0356-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

APRIL 4, 2002

_____

GARY MICHAEL EHLER, ET UX SUZANNE EHLER, APPELLANTS

V.

B.T. SUPPENAS LTD., A PARTNERSHIP, AND PATEL & DUNLAP, APPELLEES

_____

FROM THE 99TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 98-500,768; HONORABLE KELLY G. MOORE, JUDGE

_____

Before BOYD, C.J., and REAVIS and JOHNSON, JJ.

This case concerns the enforceability of deed restrictions preventing alcohol sales on land adjacent to the area known as "the Strip" near the City of Lubbock. "The Strip" is a section of Highway 87 located in Lubbock County Precinct 2. Because Precinct 2 is the only precinct in Lubbock County in which off-premises alcohol sales are permitted, businesses on "the Strip" are primarily alcohol retailers. Appellees B.T. Suppenas, Ltd.

and Patel & Dunlap are partnerships that own most of the property making up "the Strip." Appellants Gary Michael Ehler and Suzanne Ehler (the Ehlers) brought the underlying suit seeking judgment that the restrictions preventing the sale of alcohol on their adjacent land were not enforceable. The trial court found the restrictions were enforceable. Hence, this appeal.

All of the property with which we are concerned was originally owned by J. T. Krueger, who died before the transactions at issue here. For clarity, we will refer to his heirs collectively as the Kruegers. The property was originally farm land. In 1984 and 1985, two tracts of the land were sold to James and Shirley Stuart (Stuarts). On June 18, 1989, the Kruegers sold 18.9 acres of the remaining land to B.T. Suppenas, Ltd. (Suppenas) for $1,500,000 to build stores for alcohol sales. Contemporaneously, and to induce Suppenas to purchase the 18.9 acre tract, the Kruegers executed and filed a "Declaration of Restrictions" that defined the tract sold to Suppenas as the dominant estate and the remainder of the property as the servient estate. In relevant part, the declaration provided, "[n]o part, parcel, or lot of the real property described herein as the Servient Estate shall ever be used for the purpose of off premises sale of alcoholic beverages." It also provided that the restrictions were imposed "for the purpose of protecting the value and the desirability of the Dominant Estate."

In 1994, the Kruegers sold an additional portion of the servient estate to the Stuarts. Suppenas sold 5.4 acres of its 18.9 acres to the Patel & Dunlap (Patel) partnership for

$1,200,000. In 1997, the Kruegers offered the remaining 218 acres of the servient estate for sale. Appellant Gary Ehler saw the property in March of 1997 and, upon contacting the real estate agent, learned of the restrictions against the sale of alcohol. Ehler sought to purchase the property planning to develop it by "subdividing it into acreage, either half-acre VA lots, sell off the frontage, possibly [for] a liquor store" because he thought "there was a good chance we could get [the restrictions] removed." He purchased the remaining 218 acres for $1,200 per acre. He averred that the price paid was a "little higher" than farm land, but he felt its value would increase significantly if the restrictions against alcohol sales were lifted.

On January 9, 1998, the Ehlers filed the underlying suit against Suppenas seeking a judicial decision that the restrictions which, they averred, amounted to "a covenant not to compete," were unenforceable as an unreasonable restraint on trade. On March 3, 1998, Patel intervened in the suit seeking a declaration that the restrictions were valid. The Ehlers then unsuccessfully sought summary judgment that the restrictions were invalid because they were not limited in duration. After that motion was denied, in October 1998, the Ehlers added the Stuarts as parties to the suit because their property was also governed by the restrictions. However, the Stuarts disclaimed any request for relief.

At the bench trial on April 25, 2001, the only testimony taken was that of Gary Ehler, and various documents were introduced. The trial court rendered a take-nothing judgment against the Ehlers, but denied Suppenas and the Stuarts any recovery for attorney fees.

3

The court also made findings of fact and conclusions of law in response to the Ehlers' request. The Ehlers now challenge the trial court judgment in four issues. In their issues, they challenge the legal and factual sufficiency of the evidence to support the trial court's findings of fact and conclusions of law upon which its judgment was based. We will set out such of those findings of fact and conclusions of law as may become necessary in the discussion of the issues in this appeal.

Findings of fact in a bench trial have the same weight, force, and dignity as jury findings in response to questions submitted to it. *See Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). A trial court's findings are reviewable for legal and factual sufficiency of the evidence by the same standards that are applicable in reviewing the sufficiency of the evidence to support jury findings. *Id*. To determine whether the evidence is legally sufficient, all the record evidence and reasonable inferences from that evidence must be reviewed in a light most favorable to the findings. *Formosa Plastics Corp. USA v. Presidio Engineers & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998). Anything more than a scintilla of evidence is legally sufficient to support the findings. *Id.*

In considering a factual sufficiency challenge, we review all of the evidence and reverse only if the challenged finding is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1952). In conducting our review, however, we may not weigh the evidence and set aside the findings merely

4

because we are of the opinion that a different result is more reasonable. *Pool*, 715 S.W.2d at 634.

In their first issue, the Ehlers argue there is no evidence supporting the trial court's findings of fact 12 and 13. In finding of fact 12, the trial court found that "interveners [Stuarts] and Defendants [Suppenas] paid a premium price for the property included in the dominant estate in reliance upon the validity and enforceability of the restrictive covenant in dispute in this case." In finding of fact 13, the trial court found "the primary purpose of the restrictive covenant in issue is not to control competition, but to restrict land usage of the servient estate for the benefit of the dominant estate with a corresponding increase in value benefit to the Grantor-owners who imposed the restrictive covenant."

The evidence is legally sufficient to support these findings. The declaration of restrictions expressly provided that they were imposed "for the purpose of inducing" Suppenas to purchase other property. The evidence also shows that Suppenas paid approximately $83,000 per acre, while the Ehlers testified that farm land in the vicinity sold for less than $1,200 per acre. The benefit of the restrictions to the dominant estate is further supported by the evidence that Patel paid $220,000 per acre for their portion of the dominant estate. The Ehlers' first issue is overruled.

In their second issue, the Ehlers challenge the factual sufficiency of the evidence supporting findings of fact 9, 11, 12, 13 and 14. In finding 9, the trial court found that the Ehlers acquired the servient estate at its fair market value based on the restriction

5

covenants being valid and enforceable. Gary Ehler's own testimony was the $1,200 per acre price paid, although "probably a little higher than [its value] as farm land," was not higher than land sold for development. Gary Ehler further testified that he offered to buy it "because [he] thought it was a good buy at the price being offered even with this restriction on it and assuming the restriction was enforceable." There is no evidence in the record that would controvert this testimony. Thus, this finding was not against the great weight and preponderance of the evidence.

In finding 11, the trial court found that the Ehlers purchased the property with a view towards becoming involved in litigation seeking to remove the restrictions. At trial, Gary Ehler testified that he purchased the property with the intent to develop it by subdividing it into half-acre tracts and "sell[ing] off the frontage, possibly [for] a liquor store," even though he knew of the restriction because he "thought there was a good chance we could get it removed." That evidence clearly supports finding 11 and we find no controverting evidence in the record.

Our discussion of the legal insufficiency challenge to findings number 12 and 13 will also resolve the factual sufficiency challenge to those findings because the Ehlers have not noted any evidence contrary to those findings.

In finding number 14, the trial court found there was no contractual relationship between the Ehlers and Suppenas or Patel related to any restriction on competition. This finding was relevant to the Ehlers' theory that section 15.50 of the Texas Business &

6

Commerce Code governing non-competition applies to the restriction at issue. At trial, Gary Ehler admitted that he did not have any contractual relationship with anyone owning property along the strip except the Kruegers, who are not parties to this litigation. This admission is sufficient to resolve this issue. Even so, as we discuss below, section 15.50 is inapplicable as a matter of law. The Ehlers' second issue is overruled.

In their last two issues, the Ehlers challenge the trial court's conclusions of law. In that connection, we review conclusions of law *de novo*. *See State v. Heal*, 917 S.W.2d 6, 9 (Tex. 1996). In issue 3, the Ehlers contend conclusions of law 4, 6, and 8 were not relevant to any matters before the court. In these conclusions, the trial court found 4) there was no waiver or abandonment of the restrictive covenant, 6) the covenant is not ambiguous, and 8) the covenant is clear, concise, and lawful. Accepting, arguendo, the Ehlers' contention that these matters were not before the court, they fail to make any showing of how the conclusions probably caused the rendition of an improper judgment. Consequently, any error would be harmless. Tex. R. App. P. 44.1(a). We overrule the third issue.

In their fourth issue, the Ehlers argue conclusions of law 1, 2, 3, 5, and 7 are erroneous because there is no time limitation on the restriction against alcohol sales. Those conclusions state 1) the restrictive covenant is valid and enforceable, 2) it is a covenant running with the title to the land and is not an agreement not to compete, 3) the

covenant does not contravene public policy, 5) the covenant is not an unlawful attempt to monopolize trade, and 7) the Ehlers are bound by the restrictive covenant.

A proper analysis of these challenges turns on the correctness of conclusion of law 2. Section 15.50 of the Business and Commerce Code specifies *criteria* for enforceability of covenants not to compete almost exclusively in the context of employment contracts. *See* Tex. Bus. & Com. Code Ann. § 15.50 (Vernon Supp. Pamph. 2002). It does not govern the rights and liabilities of owners of real property. The Ehlers have not cited, and we have not found, any case in which section 15.50 has been applied to restrictions on the use of real property. In advancing their contention, the Ehlers rely on *Bent Nail Developers, Inc. v. Brooks*, 758 S.W.2d 2d 692 (Tex.App.--Fort Worth 1988, writ denied). That case involved a covenant restricting the use of land to residential use, even though it was located in an area zoned for commercial use only. *Id.* at 693. In arriving at its decision, the court considered the facts that the covenant and zoning combined to prevent any use of the land, and that the grantor was engaged in commercial development, led it to conclude there was "no substantial difference between such a restriction and a non-competition agreement" and discussed the application of non-compete rules. *Id.*

However, the *Bent Nail* rationale is not applicable here. First, unlike the restrictive covenant in that case, the restriction applicable to the Ehler property does not prevent any use of the property, it only bars one use. Second, the parties in *Bent Nail* had a contractual relationship through the deed at issue. Here, the parties have no contractual

8

relationship. Third, none of the authority cited by the *Bent Nail* court held that a real estate restriction was actually a non-competition agreement or should be analyzed under the standards applicable to non-competition agreements. In *Anderson v. Rowland* 44 S.W.911 (Tex.Civ.App. 1898, no writ), cited in *Bent Nail,* the court declined to decide if a covenant contained in a deed was real or personal. In the 14 years since it was decided, no Texas court has cited or relied on *Bent Nail.* To the degree that *Bent Nail* might support a conclusion that real property restrictive covenants must satisfy the requisites of non-competition agreements, we decline to follow it.

In Texas, a real property covenant runs with the land when it touches and concerns the land, relates to a thing in existence or specifically binds the parties and their assigns, is intended by the parties to run with the land, and when the successor to the burden has notice. *Inwood North Homeowners Ass'n, Inc. v. Harris*, 736 S.W.2d 632, 635 (Tex. 1987). There must also be privity of estate between the parties when the covenant was made. *Wayne Harwell Properties v. Pan American Logistics Center, Inc.*, 945 S.W.2d 216, 218 (Tex.App.--San Antonio 1997, writ denied). The restriction at issue here does touch and concern the land because it limits the use to which the land can be put. The written restriction specifically binds the parties and their assigns, and evidences an intent that the restriction run with the land. The record shows the Ehlers, as successors to the Kruegers' burdened estate, had both actual notice of the restriction, as well as constructive notice through the filing of the restrictive covenant declaration. There was also privity of estate when the covenant was established. Thus, the covenant restricting alcohol sales on the

9

servient estate meets the requirements for a covenant running with the land.  *See Inwood*, 736 S.W.2d at 635.

The trial court did not err in making conclusion 2, which mandates a holding that conclusions of law 1 and 7 are also correct.  Conclusion of law 3, that the covenant does not contravene public policy, is supported by the holding in *Karam v. H.E. Butt Grocery Co.*, 527 S.W.2d 481 (Tex.Civ.App.--San Antonio 1975, writ ref'd n.r.e.), recognizing the rule that anti-trust statutes do not apply equally to restrictive covenants on real property as they would to other agreements having the effect of limiting competition.  *Id*. at 484. Moreover, the amount of property subject to the restriction, some 218 acres out of an entire county precinct, is so small as to preclude a finding that it functions as an impermissible restraint on trade.  The evidence showed there were alcohol retailers operating in the immediate area.  The Ehlers have failed to show that conclusion of law 5 was in error.  We overrule the Ehlers' fourth and final issue.

In sum, all of the Ehlers' issues are overruled and the judgment of the trial court is affirmed.


John T. Boyd
Chief Justice

Publish.

10