NO. 07-02-0514-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL E



NOVEMBER 5, 2003



______________________________




RICKY STARKS, #733678, APPELLANT



V.



THE TEXAS DEPARTMENT OF CRIMINAL JUSTICE, APPELLEE




_________________________________



FROM THE 108TH DISTRICT COURT OF POTTER COUNTY;



NO. 089812-00-E; HONORABLE ABE LOPEZ, JUDGE



_______________________________



Before REAVIS and CAMPBELL, JJ., and BOYD, S.J. (1)

Memorandum Opinion

 Appellant Ricky Starks appeals from an order dismissing his pro se, in forma
pauperis suit under Chapter 14 of the Texas Civil Practice and Remedies Code (the Code). 
We affirm the judgment of the trial court.

Procedural History

 Appellant is an inmate at the Clements Unit of the Texas Department of Criminal
Justice, Institutional Division (the Department). On April 29, 2002, he filed suit against the
Department alleging he had sustained mental and physical suffering as a result of being
obliged to sit on a concrete floor because of a lack of adequate seating in the penitentiary
day room. On June 19, 2002, the Department filed its answer and, incident to that answer,
filed a special exception seeking a dismissal of the suit on the basis that appellant had not
filed an affidavit sufficient to satisfy section 14.004 of the Code and, in particular, that
appellant had failed to include the operative facts about previous suits filed by him. 

 On June 20, 2002, the trial court entered an order sustaining the exception and
allowing appellant ten days to "re-plead his cause of action against Defendant in
conformity with this order." In response to that order, appellant filed a sequence of
pleadings in which he asserted that his failure to meet the requirements of the statute were
because Chapter 14 was not included in the copy of the Code in the prison library, that the
trial court should take judicial notice of his prior suits which were dismissed on a "time
barred basis," and that the "insufficient issues in his present affidavit are the result of
prejudice caused to him by the defendant." On October 17, 2002, the trial court executed
the order dismissing appellant's suit on the basis that it was "FRIVOLOUS for failure to
comply with Chapter 14 of the Texas Civil Practices [sic] and Remedies Code." 

 In presenting his appeal, and in various issues directed at the same question,
appellant contends the trial court reversibly erred in dismissing his suit because of a failure
to comply with Chapter 14 of the Code. In his reply brief, he focalizes his challenge to be
the "controlling error is his [appellant's] allegation of being deprived of total access to the
only information relevant to the issue upon which his lawsuit was dismissed, during the
relevant time period he was required to prepare and file the action."

Discussion

 As an inmate, appellant's suit is governed by Chapter 14 of the Texas Civil Practice
and Remedies Code. See Tex. Civ. Prac. & Rem. Code Ann. §§ 14.001-014 (Vernon
2002); Thompson v. Henderson, 927 S.W.2d 323, 324 n.1 (Tex. App.-Houston [1st Dist.]
1996, no writ). Chapter 14 was designed to control the flood of frivolous lawsuits being
filed in the courts of this state by prison inmates that consume valuable judicial resources
with little offsetting benefits. Hickson v. Moya, 926 S.W.2d 397, 399 (Tex. App.-Waco
1996, no writ). Under this chapter, a trial court has broad discretion to dismiss an inmate's
suit if it finds that the claim is frivolous or malicious. Hickman v. Adams, 35 S.W.3d 120,
123 (Tex. App.-Houston [14th Dist.] 2000, no pet.).

 A trial court's dismissal of a suit such as this one in which the inmate has filed an
affidavit or declaration of inability to pay costs is reviewed under an abuse of discretion
test. Barnum v. Munson, 998 S.W.2d 284, 286 (Tex. App.-Dallas 1999, pet. denied);
McCollum v. Mt. Ararat Baptist Church, Inc., 980 S.W.2d 535, 536 (Tex. App.-Houston
[14th Dist.] 1998, no pet.); Hickson v. Moya, 926 S.W.2d at 398-99. A court abuses its
discretion if it acts without reference to guiding rules or principles. Clark v. J. W. Estelle
Unit, 23 S.W.3d 420, 421 (Tex. App.-Houston [1st Dist.] 2000, pet. denied). It is
discretionary with the court to conduct a hearing to determine whether an inmate's suit
should be dismissed. Thomas v. Wichita General Hosp., 952 S.W.2d 936, 938 (Tex.
App.- Fort Worth 1997, pet. denied).

 Section 14.003 of the Code provides that a trial court may dismiss a claim if the
court finds the claim to be frivolous or malicious. Tex. Civ. Prac. & Rem. Code Ann. §
14.03(a)(2) (Vernon 2002). In determining whether a suit is frivolous or malicious, the
court may consider, inter alia, whether the claim is substantially similar to a previous claim
filed by the inmate because the claim arises from the same operative facts. Id. §
14.003(b)(4).

 In this case, even though he was given a specific opportunity to do so, other than
additional general allegations, appellant failed to amend his affidavit to allege the specific
operative facts of his prior suits. Under this record, we cannot say that the trial court erred
in its dismissal of this inmate suit. 

 Accordingly, all of appellant's points are overruled, and the judgment of the trial
court is affirmed. 


 John T. Boyd

 Senior Justice 
1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by
assignment. Tex. Gov't Code Ann. §75.002(a)(1) (Vernon Supp. 2003). 



mary purpose of
the restrictive covenant in issue is not to control competition, but to restrict land usage of
the servient estate for the benefit of the dominant estate with a corresponding increase in
value benefit to the Grantor-owners who imposed the restrictive covenant."

 The evidence is legally sufficient to support these findings. The declaration of
restrictions expressly provided that they were imposed "for the purpose of inducing"
Suppenas to purchase other property. The evidence also shows that Suppenas paid
approximately $83,000 per acre, while the Ehlers testified that farm land in the vicinity sold
for less than $1,200 per acre. The benefit of the restrictions to the dominant estate is
further supported by the evidence that Patel paid $220,000 per acre for their portion of the
dominant estate. The Ehlers' first issue is overruled. 

 In their second issue, the Ehlers challenge the factual sufficiency of the evidence
supporting findings of fact 9, 11, 12, 13 and 14. In finding 9, the trial court found that the
Ehlers acquired the servient estate at its fair market value based on the restriction
covenants being valid and enforceable. Gary Ehler's own testimony was the $1,200 per
acre price paid, although "probably a little higher than [its value] as farm land," was not
higher than land sold for development. Gary Ehler further testified that he offered to buy
it "because [he] thought it was a good buy at the price being offered even with this
restriction on it and assuming the restriction was enforceable." There is no evidence in the
record that would controvert this testimony. Thus, this finding was not against the great
weight and preponderance of the evidence.

 In finding 11, the trial court found that the Ehlers purchased the property with a view
towards becoming involved in litigation seeking to remove the restrictions. At trial, Gary
Ehler testified that he purchased the property with the intent to develop it by subdividing
it into half-acre tracts and "sell[ing] off the frontage, possibly [for] a liquor store," even
though he knew of the restriction because he "thought there was a good chance we could
get it removed." That evidence clearly supports finding 11 and we find no controverting
evidence in the record.

 Our discussion of the legal insufficiency challenge to findings number 12 and 13 will
also resolve the factual sufficiency challenge to those findings because the Ehlers have
not noted any evidence contrary to those findings. 

 In finding number 14, the trial court found there was no contractual relationship
between the Ehlers and Suppenas or Patel related to any restriction on competition. This
finding was relevant to the Ehlers' theory that section 15.50 of the Texas Business &
Commerce Code governing non-competition applies to the restriction at issue. At trial,
Gary Ehler admitted that he did not have any contractual relationship with anyone owning
property along the strip except the Kruegers, who are not parties to this litigation. This
admission is sufficient to resolve this issue. Even so, as we discuss below, section 15.50
is inapplicable as a matter of law. The Ehlers' second issue is overruled.

 In their last two issues, the Ehlers challenge the trial court's conclusions of law. In
that connection, we review conclusions of law de novo. See State v. Heal, 917 S.W.2d 6,
9 (Tex. 1996). In issue 3, the Ehlers contend conclusions of law 4, 6, and 8 were not
relevant to any matters before the court. In these conclusions, the trial court found 4)
there was no waiver or abandonment of the restrictive covenant, 6) the covenant is not
ambiguous, and 8) the covenant is clear, concise, and lawful. Accepting, arguendo, the
Ehlers' contention that these matters were not before the court, they fail to make any
showing of how the conclusions probably caused the rendition of an improper judgment. 
Consequently, any error would be harmless. Tex. R. App. P. 44.1(a). We overrule the
third issue.

 In their fourth issue, the Ehlers argue conclusions of law 1, 2, 3, 5, and 7 are
erroneous because there is no time limitation on the restriction against alcohol sales. 
Those conclusions state 1) the restrictive covenant is valid and enforceable, 2) it is a
covenant running with the title to the land and is not an agreement not to compete, 3) the
covenant does not contravene public policy, 5) the covenant is not an unlawful attempt to
monopolize trade, and 7) the Ehlers are bound by the restrictive covenant. 

 A proper analysis of these challenges turns on the correctness of conclusion of law
2. Section 15.50 of the Business and Commerce Code specifies criteria for enforceability
of covenants not to compete almost exclusively in the context of employment contracts. 
See Tex. Bus. & Com. Code Ann. § 15.50 (Vernon Supp. Pamph. 2002). It does not
govern the rights and liabilities of owners of real property. The Ehlers have not cited, and
we have not found, any case in which section 15.50 has been applied to restrictions on the
use of real property. In advancing their contention, the Ehlers rely on Bent Nail
Developers, Inc. v. Brooks, 758 S.W.2d 2d 692 (Tex.App.--Fort Worth 1988, writ denied). 
That case involved a covenant restricting the use of land to residential use, even though
it was located in an area zoned for commercial use only. Id. at 693. In arriving at its
decision, the court considered the facts that the covenant and zoning combined to prevent
any use of the land, and that the grantor was engaged in commercial development, led it
to conclude there was "no substantial difference between such a restriction and a non-competition agreement" and discussed the application of non-compete rules. Id.

 However, the Bent Nail rationale is not applicable here. First, unlike the restrictive
covenant in that case, the restriction applicable to the Ehler property does not prevent any
use of the property, it only bars one use. Second, the parties in Bent Nail had a
contractual relationship through the deed at issue. Here, the parties have no contractual
relationship. Third, none of the authority cited by the Bent Nail court held that a real estate
restriction was actually a non-competition agreement or should be analyzed under the
standards applicable to non-competition agreements. In Anderson v. Rowland 44 S.W.911
(Tex.Civ.App. 1898, no writ), cited in Bent Nail, the court declined to decide if a covenant
contained in a deed was real or personal. In the 14 years since it was decided, no Texas
court has cited or relied on Bent Nail. To the degree that Bent Nail might support a
conclusion that real property restrictive covenants must satisfy the requisites of non-competition agreements, we decline to follow it.

 In Texas, a real property covenant runs with the land when it touches and concerns
the land, relates to a thing in existence or specifically binds the parties and their assigns,
is intended by the parties to run with the land, and when the successor to the burden has
notice. Inwood North Homeowners Ass'n, Inc. v. Harris, 736 S.W.2d 632, 635 (Tex. 1987). 
There must also be privity of estate between the parties when the covenant was made. 
Wayne Harwell Properties v. Pan American Logistics Center, Inc., 945 S.W.2d 216, 218
(Tex.App.--San Antonio 1997, writ denied). The restriction at issue here does touch and
concern the land because it limits the use to which the land can be put. The written
restriction specifically binds the parties and their assigns, and evidences an intent that the
restriction run with the land. The record shows the Ehlers, as successors to the Kruegers'
burdened estate, had both actual notice of the restriction, as well as constructive notice
through the filing of the restrictive covenant declaration. There was also privity of estate
when the covenant was established. Thus, the covenant restricting alcohol sales on the
servient estate meets the requirements for a covenant running with the land. See Inwood,
736 S.W.2d at 635.

 The trial court did not err in making conclusion 2, which mandates a holding that
conclusions of law 1 and 7 are also correct. Conclusion of law 3, that the covenant does
not contravene public policy, is supported by the holding in Karam v. H.E. Butt Grocery
Co., 527 S.W.2d 481 (Tex.Civ.App.--San Antonio 1975, writ ref'd n.r.e.), recognizing the
rule that anti-trust statutes do not apply equally to restrictive covenants on real property
as they would to other agreements having the effect of limiting competition. Id. at 484. 
Moreover, the amount of property subject to the restriction, some 218 acres out of an entire
county precinct, is so small as to preclude a finding that it functions as an impermissible
restraint on trade. The evidence showed there were alcohol retailers operating in the
immediate area. The Ehlers have failed to show that conclusion of law 5 was in error. We
overrule the Ehlers' fourth and final issue.

 In sum, all of the Ehlers' issues are overruled and the judgment of the trial court is
affirmed. 


 John T. Boyd

 Chief Justice


Publish.