718 ASSOCIATES, LTD., Appellant,

v.

SUNWEST N.O.P., INC., Appellee.

No. 10–98–135–CV.

Court of Appeals of Texas,
Waco.

Aug. 31, 1999.

Rehearing Overruled Oct. 13, 1999.

Mark H. How & Mark Frels, Short, How, Frels & Tredoux, a Professional Corporation, Dallas, for appellant.

Thomas B. Cowart, Cherry, Davis, Harrison, Montez, Williams & Baird, P.C., Waco, R. Brad Lamberth & Thomas H. Stewart, Jr., Lamberth & Stewart, P.L.L.C., Dallas, for appellee.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## OPINION

BILL VANCE, Justice.

This is an appeal from a summary judgment granted in favor of SunWest N.O.P., Inc. ("SunWest") against 718 Associates, Ltd. ("718 Associates"). The court determined that SunWest held the lessee's interest under a certain lease and was authorized to exercise options to extend the lease. 718 Associates appeals on eleven issues. The ultimate question is whether SunWest was an assignee entitled to exercise the options provision to extend the term of the lease. We will affirm the judgment.

### HISTORY

On October 21, 1976, Robert F. Gossett, Jr. ("Gossett"), as trustee, and Safeway Stores, Inc. ("Safeway/Maryland") executed a lease ("the lease") on property at 110 East Loop 340 in Lacy Lakeview. Under the terms of the lease, Safeway/Maryland agreed to rent the premises for 20 years. The lease also provided that the lessee had the right to extend the term of the lease for seven consecutive five-year periods after the original term. The lease agreement was part of a "net sale/leaseback" transaction whereby 718 Associates purchased the property from Safeway/Maryland, and Safeway/Maryland "leased back" the premises from 718 Associates. On November 30, 1976, Gossett conveyed the property and assigned the lease to 718 Associates.[1]

On November 1, 1986, Safeway/Maryland entered an "Assignment and Assumption" agreement with Safeway Stores 83, Inc. ("Safeway 83"). The agreement stated that Safeway/Maryland "assigns, sets over and transfers to [Safeway 83], its successors and assigns, all of Assignor's estate, right, title and interest in" the October 21, 1976, lease. This agreement acknowledged that Safeway/Maryland, as "assignor," continued to have liability under the lease. Safeway 83, as "assignee,"

---

1. Robert Gossett was also general partner of 718 Associates.

accepted the assignment and assumed all obligations contained in the lease. Safeway 83 acknowledged that the assignment was "subject and subordinate to the terms of said Lease."

On November 30, 1987, Safeway 83 entered into an "Assignment of Lease" with Property Development Associates ("PDA"). This agreement states that Safeway 83, as assignor, "transfers, sets over and assigns to [PDA] all right, title and interest of assignor in and to the Lease ... together with any options in favor of Assignor under the Lease...." The assignment expressly stated that PDA, the assignee, acquired the options to extend the term of the lease.

On May 16, 1988, PDA entered into an "Assignment of Lease" agreement with SunWest. The agreement states that PDA, as assignor, "transfers, sets over and assigns to [SunWest] all right, title and interest of assignor in and to the Lease ... together with any options in favor of Assignor under the Lease...." The assignment expressly stated that SunWest, the assignee, acquired the options to extend the term of the lease.

On December 31, 1994, SunWest sent notice to 718 Associates that it intended to exercise all seven five-year options to renew the lease, for a total of 35 additional years. By letter dated February 28, 1995, 718 Associates responded that SunWest was in default because it had allowed mechanic's liens to be filed against the property in violation of the lease covenants.[2] On September 21, 1995, SunWest again notified 718 Associates of its intent to exercise all the options to extend the lease term. 718 Associates responded by letter dated February 28, 1996, that it had no documentation that SunWest was Safeway/Maryland's "successor-in-interest" under the lease or that 718 Associates had consented to such a substitution. By letter dated May 7, 1996, 718 Associates re-

jected SunWest's notice on several grounds: that the terms of the lease did not allow a true "assignment"; that the right to extend the lease was personal to Safeway/Maryland because of its financial obligations; and that, at the time the lease was executed, any "assignment" provision in Article Seventh "was intended solely to permit Safeway to transfer its *occupancy* rights under the lease."

In June 1996, 718 Associates forwarded a "Renewal/Estoppel Certificate" to SunWest, for execution by Safeway/Maryland. The Estoppel Certificate stated that Safeway/Maryland[3] was the current tenant under the lease and "shall remain liable as a principal, and not merely as a guarantor or surety, for the full observance and performance of all the obligations of the Tenant under the Lease...." Safeway/Maryland did not execute the certificate.

On June 27, 1996, SunWest filed a declaratory judgment action seeking a judicial determination of the parties' rights under the lease. Both SunWest and 718 Associates filed motions for summary judgment, which were denied in January 1997. On February 18, 1998, Sunwest filed a Motion for Reconsideration of the court's prior summary judgment ruling. The court heard the matter on April 14, 1998, at which time it granted SunWest's motion for summary judgment and denied 718 Associates' motion for summary judgment.

The court's summary judgment found:

- the transfer of the lessee's interest from Safeway/Maryland to Safeway 83 under the October 21, 1976, lease was a valid assignment (not a sublease) and was authorized by the lease;
- the transfer of the lessee's interest under the lease from Safeway 83 to PDA was a valid assignment (not a sublease) and was authorized by the lease;

---

2. SunWest later cured the "default."

3. Safeway, Inc. had become the successor-in-interest to Safeway Stores, Inc.

- the transfer of the lessee's interest under the lease from PDA to SunWest was a valid assignment (not a sublease) and was authorized by the lease;
- SunWest had the right and was entitled to exercise the options to extend the lease;
- SunWest properly exercised the options, extending the lease term through November 30, 2031; and
- SunWest and/or its subtenant are entitled to possession of the leased premises under the lease.

## SUMMARY OF ARGUMENTS

718 Associates has five general areas of complaint. Four areas relate to the construction of the terms of the original lease: (1) Safeway/Maryland did not have the right or power to make a true "assignment" of its leasehold interest and its "assignees" are actually "sublessees" under which the tenant would lack the ability to exercise the options; (2) the options provision is a "personal right" of Safeway/Maryland's, exercisable solely by Safeway/Maryland; (3) the options provision is not a covenant running with the land, and is therefore personal to Safeway/Maryland; and (4) SunWest is precluded from exercising the options to extend because 718 Associates did not consent to any of the "assignments" through which SunWest claims an interest. 718 Associates' fifth area of complaint asserts evidentiary errors by the court.

## THE LEASE

The pertinent lease provisions are as follows:

This Lease, made the 21st day of October, 1976, between ROBERT GOSSETT, Trustee, hereinafter referred to as lessor, and SAFEWAY STORES, INCORPORATED, a Maryland corporation, hereinafter referred to as lessee; WITNESSETH: That in consideration of the mutual agreements herein contained, the parties hereto do hereby covenant to and with each other as follows: *Article First:* Lessor does hereby lease to lessee the following described real property and the buildings and improvements thereon [property description omitted].

\* \* \* \* \* \* \*

*Article Seventh:* Lessee shall have the right to assign or transfer this lease or to underlease or sublet the whole or any part of said leased premises. Should lessee assign this lease it shall nevertheless remain liable to lessor for full payment of the rent and lessee's other obligations under this lease.

\* \* \* \* \* \* \*

*Article Seventeenth:* Lessor hereby grants to lessee, the right, at lessee's option, to extend the term of this lease for seven (7) separate and additional periods of five (5) years each after the expiration of the term hereof at an annual rental payable in equal monthly installments, equivalent to three per centum (3%) of SIX HUNDRED NINETY–ONE THOUSAND AND N0/100 dollars ($691,000.00) less any net surplus award paid to lessor under Article Twelfth hereof, and upon the terms (other than length of term and monthly rental) herein specified. These options shall be exercised by written notice given to lessor or delivered or mailed to lessor, at the address at which the rent is then payable, at least sixty (60) days before the expiration of the original term hereof, or, in the event lessee has previously exercised one or more options herein given, such notice shall be given at least sixty (60) days before expiration of the option term then in effect. The parties hereto agree that a new lease need not be executed upon the exercise of any of these options, but that this lease will remain in full force and effect, changed only as to the matters specified in this Article. . . .

## STANDARDS FOR REVIEW

### SUMMARY JUDGMENT

The standards for reviewing a summary judgment are well established. *Nixon v. Mr. Property Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex.1985). The movant has the burden of showing that no genuine issue of material fact exists and that it is entitled to the summary judgment as a matter of law. *Id.* The reviewing court must accept all proper summary judgment evidence favorable to the non-movant as true. *Id.* at 548–49. Every reasonable inference must be indulged in favor of the non-movant and all doubts resolved in its favor. *Id.* at 549.

### CONTRACT CONSTRUCTION

■ Our review is additionally guided by the rules of contract construction. In construing a lease, the court seeks the intention of the parties as that intention is expressed in the lease. *Sun Oil Co. (Delaware) v. Madeley*, 626 S.W.2d 726, 728 (Tex.1982). The court will enforce an unambiguous instrument as written, and ordinarily the writing alone will be deemed to express the parties' intentions. *Id.* Parol evidence is not admissible to render a contract ambiguous which on its face is capable of being given a definite, certain legal meaning. *Id.* Where the meaning of a contract is plain and unambiguous, a party's construction is immaterial. *Id.*

■ Whether a contract is ambiguous is a question of law that must be decided by examining the contract as a whole in light of the circumstances present when the contract was entered. *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex.1996). If its meaning is uncertain and doubtful or it is reasonably susceptible to more than one meaning, taking into consideration circumstances present when the particular writing was executed, then it is ambiguous and its meaning must be resolved by a finder of fact. *Lenape Resources Corp. v. Tennessee Gas Pipeline Co.*, 925 S.W.2d 565, 573 (Tex.1996) (citing *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983)). If a contract is found to be ambiguous, parol evidence is admissible to ascertain the true intent of the parties. *Friendswood Dev. Co. v. McDade + Co.*, 926 S.W.2d 280, 283 (Tex. 1996).

## ISSUES PRESENTED

### ASSIGNMENT OR SUBLEASE

In its first three issues, 718 Associates complains that the court erred in determining that: (1) SunWest was an "assignee" of the lease; (2) the transfer from Safeway/Maryland to Safeway 83 was an assignment; and (3) the other transfers under which SunWest claims were assignments of the lease.

■ To determine these issues, we must first review the difference between an assignment and a sublease.[4] As a general rule, if an instrument conveys the entire "term" of the lease without retaining any reversionary interest, the instrument will be construed as an assignment. *Davis v. Vidal*, 105 Tex. 444, 151 S.W. 290, 291 (1912). On the other hand, if the conveying party retains any reversionary interest in the estate conveyed, the instrument will be construed as a sublease. *Id.* In assigning the whole "term" of the lease, the word "term" means more than just the time for which the lease is given. *Id.* at 292. The assigning instrument must convey both the entire time for which the lease runs and the entire estate or interest conveyed by the original lease. *Id.* If the assignor-lessee retains a right to reenter and repossess the property on default of rental payments, the assignor-lessee retains a contingent reversionary interest and the instrument will be construed as a sublease. *Id.*

---

4. The parties agree that if SunWest is a "sublessee," it does not have the right to exercise the options to extend the lease.

When the assignor conveys its entire interest, without retaining any reversionary interest, the assignee becomes a tenant in place of the original lessee and is in privity of estate and contract with the lessor. *Amco Trust, Inc. v. Naylor*, 159 Tex. 146, 317 S.W.2d 47, 50 (1958); *Interstate Fire Ins. Co. v. First Tape, Inc.*, 817 S.W.2d 142, 145 (Tex.App.—Houston [1st Dist.] 1991, writ denied). The assignment destroys the privity of estate between the lessor and the original lessee. *Interstate Fire*, 817 S.W.2d at 145. However, the original lessee's liability on the original contract remains unless expressly released by the lessor. *Id.* The form of the instrument is not controlling. *Davis*, 151 S.W. at 291. An instrument may purport to be an "assignment," but will be construed as a sublease if the assignor retains any reversionary interest. *See id.*

718 Associates' first issue argues that Article Seventh of the lease did not give Safeway/Maryland the power to make a true assignment. Article Seventh states:

*Article Seventh:* Lessee shall have the right to assign or transfer this lease or to underlease or sublet the whole or any part of said leased premises. Should lessee assign this lease it shall nevertheless remain liable to lessor for full payment of the rent and lessee's other obligations under this lease.

718 Associates argues that, although the first sentence allows assignment, the second sentence—that Safeway/Maryland would "remain liable to lessor for full payment of the rent and lessee's other obligations under this lease"—means that Safeway/Maryland retained a reversionary interest in the lease. *See id; Amco Trust*, 317 S.W.2d at 50. Thus, 718 Associates argues that, despite the "assignment" language, Article Seventh granted Safeway/Maryland only the right to sublease. *Id.* SunWest responds that the second sentence of Article Seventh merely states Safeway/Maryland's surety obligation as an assignor under the lease. *Twelve Oaks Tower I, Ltd. v. Premier Allergy, Inc.*, 938 S.W.2d 102, 116 (Tex.App.—Houston [14th Dist.] 1996, no writ).

The first sentence of Article Seventh unequivocally grants Safeway/Maryland the right to assign or sublease. The second sentence states that, if it assigned the lease, Safeway/Maryland would remain liable for the rent and obligations under the lease. As SunWest notes in its brief, a "reversion" is defined as "a future interest in which a grantor retains a present right to a future interest in property that the grantor conveys to another...." Blacks Law Dictionary 1320 (6th Ed.1990). A "reversionary" interest is usually a right to reenter or repossess the premises after default. *Amco Trust*, 317 S.W.2d at 51 (security interest given which would terminate on satisfaction of debt); *Davis*, 151 S.W. at 291 (right to reenter and repossess premises on default).

Here, the lease does not give Safeway/Maryland the right to repossess or reenter the property on default. The second sentence of Article Seventh merely states the applicable law that, even after assignment, the original lessee remains in privity of contract and liable to the lessor on the original contract absent an express release from the lessor. *Interstate Fire*, 817 S.W.2d at 145. We do not find that the court erred in determining that Article Seventh allowed Safeway/Maryland the right to assign the lease. We overrule issue one.

In issue two, 718 Associates argues that the transfer between Safeway/Maryland and Safeway 83 was not an assignment. The November 1986 "Assignment and Assumption" agreement between Safeway/Maryland and Safeway 83 stated that Safeway/Maryland "assigns, sets over and transfers to [Safeway 83], its successors and assigns, all of Assignor's estate, right, title and interest in" the October 21, 1976, lease. Safeway/Maryland, as "assignor," continued to have liability under the lease "to the extent and in the manner provided" in the lease. Safeway 83, as

"assignee," accepted the assignment and assumed all obligations contained in the lease. Safeway 83 acknowledged that the assignment was "subject and subordinate to the terms of said Lease."

718 Associates argues that the latter two phrases mean that Safeway/Maryland did not part with its entire estate, thus creating a sublease. SunWest responds, as we noted in issue one, that the phrases merely state the applicable law: even after assignment, the assignor is not relieved of liability under the lease. *Twelve Oaks*, 938 S.W.2d at 114; *Interstate Fire*, 817 S.W.2d at 145; *University of Texas Med. Branch at Galveston v. Allan*, 777 S.W.2d 450, 453 (Tex.App.—Houston [14th Dist.] 1989, no writ) (assignor does not relieve himself of contractual obligations merely by assigning the contract to a third party).[5] SunWest further states that all assignments must by their nature be subordinate to the underlying lease.

The 1986 "Assignment and Assumption" transferred "all of [Safeway/Maryland's] estate" and interest in the lease to Safeway 83. The court did not err in determining that the document was an assignment. *See Davis*, 151 S.W. at 291. We overrule issue two.

In issue three, 718 Associates also argues that the later assignments to PDA and SunWest are not "assignments." Both state that the assignor "transfers, sets over and assigns to assignee all right, title and interest of assignor in and to the Lease ... together with any options in favor of Assignor under the Lease...." In fact, these agreements are more explicit in their "assignment" language than the assignment between Safeway/Maryland and Safeway 83. For the reasons stated in issue two, we overrule issue three. *See id.*

### THE LEASE COVENANTS

In issues four through eight, 718 Associates argues that the court erred as a mat-

ter of law in its findings regarding the Article Seventeenth options provision. Issue four asserts that the options were personal rights exercisable only by Safeway/Maryland, the original lessee. Issue five asserts that the options were not covenants running with the land. Issues six, seven, and eight assert, respectively, that SunWest: did not have the right to exercise the options; did not exercise the options properly; and is not entitled to possession of the premises.

### Lessor's Consent to Assignment

 Issue six asserts that, because this is a lease of real property, 718 Associates' consent was required to assign the lease. Although contracts are generally assignable, those dealing with real property have a statutory restriction: "During the term of a lease, the tenant may not rent the leasehold to any other person without the prior consent of the landlord." TEX. PROP.CODE ANN. § 91.005 (Vernon 1995). This provision applies to both assignments and subleases. *Reynolds v. McCullough*, 739 S.W.2d 424, 429 (Tex. App.—San Antonio 1987, writ denied). As a matter of public policy, the provision is incorporated into all leases by operation of law. *Id.*

The parties agree that this statutory provision can be avoided if the lease "clearly expresses such an intent." *Lawther v. Super X Drugs of Texas, Inc.*, 671 S.W.2d 591, 592 (Tex.App.—Houston [1st Dist.] 1984, no writ); *Young v. De La Garza*, 368 S.W.2d 667, 670 (Tex.Civ. App.—Dallas 1963, no writ); *Coffin v. Schulz*, 260 S.W. 612, 613 (Tex.Civ.App.— Waco 1924, no writ) (lease provided that lessee had the right to assign "at any time" or "at will"). They differ, however, on whether Article Seventh clearly expresses the parties' intent to allow assignment without 718 Associates' prior consent.

---

**5.** SunWest also points out that the assignment of the lessor's interest from Gossett to 718 Associates states that it is "subject to all

terms, conditions, reservations and limitations set forth in the lease...."

Article Seventh states: "Lessee shall have the right to assign or transfer this lease or to underlease or sublet the whole or any part of said lease premises." 718 Associates cites *Young* for the proposition that this language does not clearly express an intent to modify the statutory provision. *Young*, 368 S.W.2d at 670. The lease in *Young* had two clauses concerning assignment. Clause 3 stated that the lessee could not assign the lease without the lessor's written consent and referred to Clause 14. *Id.* at 669. Clause 14 stated that the lessee could assign the lease "subject to the conditions and covenants herein." *Id.* The court held that the lease did not clearly express an intent to allow assignment without the lessor's written consent. *Id.* at 670. In *Lawther*, the lease stated that if the lessee wanted to assign the lease, it had to give specific notice of the proposed assignment to the lessor. *Lawther*, 671 S.W.2d at 592. The lessor could then refuse to approve the assignment. *Id.* The court found that the lease did not alter the statutory requirement of prior consent. *Id.*

Section 91.005 is incorporated into the terms of the lease as a matter of law. *Reynolds*, 739 S.W.2d at 429. Thus, if the lease before us were silent regarding assignment, Safeway/Maryland would have needed 718 Associates' consent to assign. This consent requirement has been the law of the state for many years. *See Gulf, C. & S.F. Ry. Co. v. Settegast*, 79 Tex. 256, 15 S.W. 228 (1891). However, Article Seventh states that the lessee has the right to assign the lease. Article Seventh further states that if the lessee assigns the lease, it would nevertheless remain liable on its obligations. No other clause conflicts with Article Seventh. We believe this express- es a clear intent to allow the lessee to assign without prior consent.

We overrule issue six.

*Covenants Running With the Land?*

The various assignments purport to transfer the options to extend the term of the lease to the respective assignees. 718 Associates' fourth issue argues that, because of the unique aspects of the "net sale/leaseback" transaction, the options provision was a "personal right" granted exclusively to Safeway/Maryland. In support of this contention, 718 Associates points to: (1) the opening section of the lease defining "lessee" as Safeway/Maryland; (2) Article Seventh stating that the "lessee" shall remain liable on its obligations even after assignment; (3) Article Seventeenth granting the "lessee" the options to extend; and (4) the lack of any lease provision stating that the term "lessee" includes all "successors and assigns" of Safeway/Maryland. *See Liberty Sign Co. v. Newsom*, 426 S.W.2d 210, 214 (Tex. 1968) (lease did not define "lessor" or "lessee," but another provision bound all "heirs and assigns"); *Farrell v. Evans*, 517 S.W.2d 585, 588 (Tex.Civ.App.—Houston [1st Dist.] 1974, no writ) (lease provision stated that terms would inure to successors and assigns "the same as if such words had been inserted following the names of Lessors and Lessees"). 718 Associates further argues that other lease provisions like Article Fourteenth,[6] which provides that the "lessee" can terminate the lease during the original term if it ceases "grocery supermarket operations," are clearly personal to Safeway/Maryland. Thus, 718 Associates argues that the Article Seventeenth options to extend the lease

---

6. *Article Fourteenth:* Lessor agrees that lessee may, subject to the following conditions, at the option of lessee, terminate this lease at any time during the original term hereof provided lessee intends to cease grocery supermarket operations on the leased premises. In the event lessee desires to exercise this option and to terminate this lease, it shall give written notice to lessor of its intention to termi- nate this lease and as a part of such notice, shall offer to purchase the leased premises from lessor for the applicable price computed in accordance with the schedule attached hereto and marked Exhibit "A" less the amount of any net surplus award or awards received by lessor under the terms of article Twelfth hereof.

should also be construed as personal to Safeway/Maryland.

In issue five, 718 Associates argues that the options provision is not a "covenant running with the land." In Texas, a covenant runs with the land if: (1) it touches and concerns the land; (2) relates to a thing in existence or specifically binds the parties and their assigns; (3) is intended by the original parties to run with the land; and (4) the successor to the burden has notice. *Inwood North Homeowners' Ass'n v. Harris*, 736 S.W.2d 632, 635 (Tex. 1987). For example, a covenant to pay maintenance assessments in a subdivision touches and concerns the land. *Id.* In *Inwood*, the declaration of covenants specifically stated that the covenants would run with the land and would bind all parties acquiring rights to the property. *Id.* at 633. Under similar facts, maintenance fees on patio homes were held to be covenants running with the land. *Harris Co. Flood Control Dist. v. Glenbrook Patiohome Owner's Ass'n*, 933 S.W.2d 570, 574–75 (Tex.App.—Houston [1st Dist.] 1996, writ denied). In *Glenbrook*, the covenant declarations specifically bound purchasers and their assigns. *Id.* at 575. 718 Associates argues that Article Seventeenth fails to meet these criteria because it does not clearly provide that the right is exercisable by the lessee *and* its assigns and because the parties did not intend for the options provision to run with the land.

Here too, 718 Associates argues that, given the unusual "net sale/leaseback" arrangement between itself and Safeway/Maryland, the term "lessee" should be limited to Safeway/Maryland. *Liberty Sign*, 426 S.W.2d at 214; *In re Clerc Chemical Corp.*, 142 F.2d 672 (3rd Cir. 1944). SunWest responds that, as a general rule, covenants to renew or extend a lease run with the land unless the parties make the covenant personal. 51C C.J.S.

*Landlord & Tenant* § 58(2)(a) (1968 & Supp.1998). Thus SunWest argues that, absent a contractual restriction, the right to renew the lease passed by the assignments, and the assignees acquired the rights of the original lessee. *Id.* § 58(2)(b) (1968 & Supp.1998); *see also Springfield Fire & Marine Ins. Co. v. Republic Ins. Co.*, 262 S.W. 814, 818 (Tex.Civ.App.—Dallas 1924, writ dism'd) (assignee had the right to renew or extend the lease term as if it had been the original lessee).

Covenants running with the land bind the heirs and assigns of the covenanting parties, while personal covenants do not.[7] *See Tarrant Appraisal Dist. v. Colonial Country Club*, 767 S.W.2d 230, 235 (Tex.App.—Fort Worth 1989, writ denied). Thus if the covenant is personal, it is not a covenant running with the land. *See Neiman–Marcus Co. v. Hexter*, 412 S.W.2d 915, 919 (Tex.Civ.App.—Dallas 1967, writ ref'd n.r.e.). Whether a covenant is personal or one running with the land is determined by the intention of the parties. *See id.*

In construing a lease, we first seek the intention of the parties as that intention is expressed in the lease. *Sun Oil*, 626 S.W.2d at 728. Ordinarily the writing alone will be deemed to express the parties' intent, and an unambiguous contract will be enforced as written. *Id.* When the meaning of a contract is plain and unambiguous, a party's construction is immaterial. *Id.* at 732. Thus, if the lease is unambiguous, we may not look to parol evidence to determine what the parties' intentions were at the time of the lease.

Article Seventh states that the lessee had the right to assign the lease. Article Seventeenth grants the "lessee" the seven options to extend the lease. Although the lease does not have a specific provision including "heirs," "successors" or

---

7. "[A] right that is personal to an assignor is one which, although related to the assigned property, constitutes an accrued cause of action that may be asserted independently of ownership of the property." *Twelve Oaks Tower I, Ltd. v. Premier Allergy, Inc.*, 938 S.W.2d 102, 115 (Tex.App.—Houston [14th Dist.] 1996, no writ).

"assigns" within the meaning of "Lessor" and "Lessee," neither does the lease exclude such entities from that meaning. Looking at the intention of the parties as expressed in the lease, we find that the options provision meets the requirements of a covenant running with the land. *See Sun Oil*, 626 S.W.2d at 728.

▬▬ As we discussed under issue one, an assignment of a lease destroys privity of estate between the lessor and the original lessee, but privity of contract between them remains. *Interstate Fire*, 817 S.W.2d at 145. The assignee becomes the tenant in place of the original lessee and is then in privity of estate and contract with the lessor. *Amco Trust*, 317 S.W.2d at 50. Accordingly, an assignee is liable for the rent and for the performance of the covenants that run with the land. *Id.* Because an assignee is obligated to pay rent and perform those covenants that run with the land, it is likewise entitled to the benefit of all the covenants and agreements of the lessor which are annexed to and run with the land. *Twelve Oaks*, 938 S.W.2d at 114 (citing *Cauble v. Hanson*, 224 S.W. 922, 924–25 (Tex.Civ.App.—El Paso 1920), *aff'd*, 249 S.W. 175 (Tex. Comm'n App.1923, judgm't adopted); *Fabrique, Inc. v. Corman*, 796 S.W.2d 790, 793 (Tex.App.—Dallas 1990), *writ denied per curiam*, 806 S.W.2d 801 (Tex.1991)). An assignment carries with it all rights, remedies, and benefits that are incidental to the thing assigned, and the effect of an assignment can be limited only by exceptions, reservations, conditions, or restrictions contained therein. *Id.*

Because we have found that SunWest is an assignee under the lease and that the options provision runs with the land, we find that SunWest had the right to exercise the options to extend the lease. We overrule issues four and five.

*Exercise of Option*

In issues seven and eight, 718 Associates asserts that the court erred as a matter of law in holding that SunWest properly exercised the options to extend the lease and

in holding that SunWest was entitled to possession of the premises. These issues are not briefed separately and are dependent on our decisions in issues four through six. Because we have overruled those issues, we also overrule issues seven and eight.

SUMMARY JUDGMENT PROOF

In issues nine through eleven, 718 Associates complains that the court erred in its consideration of the summary-judgment proof. Issue nine asserts the court erred in failing to consider the affidavit of Bob Gossett that was attached to 718 Associates' Response and Cross–Motion for Summary Judgment. Issue ten asserts that Gossett's affidavit raised material issues of fact regarding the parties' intent.

▬▬ Gossett's affidavit states that, as trustee for 718 Associates, he purchased the premises from Safeway/Maryland on October 21, 1976. Concurrent with the land purchase, he signed the lease. Gossett's affidavit states that 718 Associates relied heavily on the financial viability and credit reputation of Safeway/Maryland to obtain financing for the purchase of the property. It states that the intent of both parties was that Safeway/Maryland would remain the lessee during the primary term and any renewal terms. For this reason, the term "lessee" was used in Article Seventeenth and no reference was made to successors or assigns. Gossett's affidavit states that the rent is significantly reduced during renewal terms based on the financial strength of Safeway/Maryland.

SunWest objected that Gossett's affidavit was inadmissible parol evidence regarding the subjective intent of the parties. It argued that the lease was unambiguous and thus the court should ascertain the objective intent of the parties from the writing itself. *Sun Oil*, 626 S.W.2d at 731.

The record is silent on whether the court sustained SunWest's objection to the Gossett affidavit. We have held that, ab-

sent an order determining the objection, the disputed evidence remains part of the summary-judgment evidence. *Eads v. American Bank, N.A.,* 843 S.W.2d 208, 211 (Tex.App.—Waco 1992, no writ). Here, however, we have determined that the lease is unambiguous. Thus, parol evidence may not be considered in determining the intent of the parties. *Sun Oil,* 626 S.W.2d at 731. The Gossett affidavit was inadmissible and thus the court could not have erred in failing to consider it. We overrule issues nine and ten.

■ In its final issue, 718 Associates argues that the court erred in refusing to sustain its objection to the supplemental affidavit of Stephen Gouig. Gouig's affidavit states that he is a senior attorney in the real estate division, an assistant vice-president, and an assistant secretary for Safeway, Inc. It states that Safeway, Inc. is a successor by merger to Safeway/Maryland, and that Safeway, Inc. authorized him to make the affidavit. Gouig's affidavit states that the lease expressly provided for assignment without additional consent of the lessor. It further states: "Safeway, Inc., as successor by merger to Safeway/Maryland, acknowledges that Sun-West, as an assignee of the Lease, may exercise the extension options and that such exercise will not release Safeway, Inc. from continued liability to the lessor for payment of rent and the lessee's other obligations under the Lease during the extension periods."

As with the Gossett affidavit, the record is silent as to whether the court sustained or overruled 718 Associates' objection to the Gouig affidavit. *Eads,* 843 S.W.2d at 211. As with the Gossett affidavit, that portion of the affidavit which is parol evidence concerning the parties' intent should have been disregarded. *Sun Oil,* 626 S.W.2d at 731.

Because the lease is unambiguous, the court's failure to exclude the affidavit did not affect the judgment. We overrule issue eleven.

### CONCLUSION

Having overruled all of 718 Associates' complaints, we affirm the judgment.