ATTORNEY GENERAL OF TEXAS

GREG ABBOTT

July 28, 2011

The Honorable Glenn Hegar                       Opinion No. GA-0864
Chair, Sunset Advisory Commission
Texas State Senate                              Re:   Validity and enforceability of certain types
Post Office Box 12068                           of restrictive covenants   (RQ-0918-GA)
Austin, Texas   78711

Dear Senator Hegar:

You ask seven questions concerning the validity and enforceability of certain restrictive covenants.[1] We note at the outset that some of your questions cannot be answered without first construing a specific deed restriction or conducting a factual inquiry, functions that are beyond the scope of an attorney general opinion. Tex. Att'y Gen. Op. No. GA-0780 (2010) at 1 n.2. We can, however, provide advice as to the general legal principles applicable to your questions.

You first ask whether a restrictive covenant "fail[s] to run with the land" so as to bind future generations of land owners if it requires the owner to "pay membership fees to a for-profit club, without requiring that such fees be used for the benefit of the burdened property and without limiting club membership to owners of restricted property." Request Letter at 1.[2] Under Texas law, a covenant runs with the land when it: (1) touches and concerns the land; (2) relates to a thing in existence or specifically binds the parties and their assigns; (3) is intended by the original parties to run with the land; and (4) when the successor to the burden has notice. *Inwood N. Homeowners' Assoc., Inc. v. Harris*, 736 S.W.2d 632, 635 (Tex. 1987). Although you ask generally about whether the covenant "runs with the land," determining whether the covenant meets the last three of these requirements will likely involve questions of fact and construction of the restrictive covenant. *See* Tex. Att'y Gen. Op. Nos. JC-0480 (2002) at 5 (explaining that intent involves fact questions that this office cannot decide), JC-0282 (2000) at 4 (explaining that whether specific notice requirements

---

[1]Letter from Honorable Glenn Hegar, Chair, Sunset Advisory Commission, to Honorable Greg Abbott, Attorney General of Texas at 1–2 (rec'd Sept. 21, 2010), https://www.oag.state.tx.us/opin/index_rq.shtml ("Request Letter").

[2]Although described otherwise, the covenant at issue is more appropriately labeled an "affirmative covenant" as it "requires the covenantor to do something," as opposed to a restrictive covenant, which "is a negative covenant that limits permissible uses of land." RESTATEMENT (THIRD) OF PROP.: SERVITUDES § 1.3 (2010). Some authority suggests that the requirements which must be satisfied for a covenant to run with the land are more strictly applied to affirmative covenants than to negative covenants. 20 AM. JUR. 2D *Covenants* § 29 (2010).

have been met is a fact question that cannot be resolved by this office); *see also Raman Chandler Props., L.C. v. Caldwell's Creek Homeowners Ass'n*, 178 S.W.3d 384, 391 (Tex. App.—Fort Worth 2005, pet. denied) (construing the deed to determine whether the restrictions specifically bound the parties). The background information you provide suggests that your primary concern is whether the covenant meets the first element. Request Letter at 4–6. We therefore limit our discussion to when covenants touch and concern the land as a general proposition of Texas common law.

A covenant touches and concerns the land "[i]f the promisor's legal relations in respect to the land in question are lessened—his legal interest as owner rendered less valuable by the promise." *Westland Oil Dev. Corp. v. Gulf Oil Corp.*, 637 S.W.2d 903, 911 (Tex. 1982); *Lyle v. Jane Guinn Revocable Trust*, No. 01-09-00081-CV, 2010 WL 1053060, at *9 (Tex. App.—Houston [1st Dist.] 2010, pet. filed). We question whether a covenant requiring the landowner to pay membership fees to a recreational club in which it has no ownership interest affects the owner's legal interest in the land. However, we note that one intermediate court addressed facts like those you describe, where a covenant "required the owner of a lot in [the subdivision] to pay dues and assessments to the University Gardens Racquet Club." *Homsey v. Univ. Gardens Racquet Club*, 730 S.W.2d 763, 764 (Tex. App.—El Paso 1987, writ ref'd n.r.e.). That court ultimately concluded that the covenant touched and concerned the land. *Id.* However, without more information about the covenants in each circumstance, we cannot confirm that the deed in *Homsey* is sufficiently similar to that at issue here to provide support for the conclusion that this covenant would touch and concern the land, nor can we predict with any certainty that other Texas courts would come to the same conclusion.

You also ask whether a covenant that requires a fee be paid to a for-profit club by a new buyer each time the restricted property is sold, without requiring that such fee be used for the benefit of the burdened property, touches and concerns the land.[3] Request Letter at 2. A covenant does not have to benefit the burdened property in order to touch and concern the land. *See, e.g., Lyle*, 2010 WL 1053060, at *9. However, we have been unable to find any Texas case that addresses whether a fee like that you describe touches and concerns the land, and we question whether a covenant requiring a new buyer to pay a transfer fee affects the owner's legal interest in the land such that it would touch and concern the land.

Although we are able to provide some general advice on your first two questions, we note that it "has been found impossible to state any absolute tests to determine what covenants touch and concern land and what do not. The question is one for the court to determine in the exercise of its best judgment based upon the facts of each case." Howard R. Williams, *Restrictions on the Use of Land: Covenants Running with the Land at Law*, 27 TEX. L. REV. 419, 429 (1949). Because we are unable to fully analyze the facts surrounding each covenant, we are unable to provide a definitive answer to your questions about whether hypothetical covenants touch and concern the land.

---

[3]Property Code section 5.017 prohibits and declares void deed restrictions and other covenants running with the land that require certain transfer fees. TEX. PROP. CODE ANN. § 5.017(b) (West Supp. 2010). Exceptions are made for fees paid to a property owners' association or nonprofit associations, and this office has previously concluded that the statute does not apply to restrictive covenants that were in existence and recorded prior to the statute's effective date. *Id.* § 5.017(c); Tex. Att'y Gen. Op. No. GA-0780 (2010) at 3.

You ask in your third question whether Texas Constitution article XVI, section 50 prevents foreclosure of a homestead property based on a violation of a personal covenant that does not touch and concern the land. Request Letter at 1. Article XVI, section 50 provides that "[n]o mortgage, trust deed, or other lien on the homestead shall ever be valid unless it secures a debt described by this section." TEX. CONST. art XVI, § 50(c). It also enumerates eight exceptions to the homestead protection from forced sale: (1) purchase money security; (2) taxes due on the homestead; (3) certain owelty on partition; (4) refinancing of certain liens; (5) security for improvements; (6) certain circumscribed extensions of credit in the nature of an equity loan; (7) reverse mortgages; and (8) special financing concerning manufactured homes. *Id.* § 50(a)(1)–(8). Analyzing this section in *Inwood*, the Texas Supreme Court addressed whether homestead laws preclude foreclosure of a developer's lien for homeowners' association fees and assessments. *See generally Inwood*, 736 S.W.2d 632. While recognizing that a contractual lien for homeowners' association fees was not among the express constitutional exceptions to the homestead exceptions, the court observed that "[h]omestead rights . . . may not be construed so as to avoid or destroy pre-existing rights," and that "[i]t has long been held that an encumbrance existing against property cannot be affected by the subsequent impression of the homestead exception on the land." *Id.* at 635. Because the developer had placed the restrictions on the land before it became the homestead of the homeowners, the court concluded that the subsequent "homeowners were subject to the liens in question and an order of foreclosure would have been proper." *Id.* at 635–36. Significant to the court's decision, however, was that the "covenant in question satisifie[d] the requirements of a covenant running with the land." *Id.* at 635. A personal covenant that does not touch and concern the land does not bind the heirs and assigns of the covenanting parties. *718 Assoc., Ltd. v. Sunwest N.O.P., Inc.*, 1 S.W.3d 355, 364 (Tex. App.—Waco 1999, pet. denied). Instead, it would bind only the original covenanting parties, prohibiting any subsequent owners from having their land foreclosed on based on the personal covenant.

You next ask if Texas Constitution article XVI, section 50 prevents "foreclosure of a homestead property based on a failure to pay a fee not identified or described in any instrument as a lien obligation before the property became a homestead." Request Letter at 1. As discussed above, article XVI, section 50 allows the developer of a subdivision to create liens on land to secure the payment of assessments, and foreclosure of a homestead property is a permissible remedy for failure to pay those assessments. *Inwood*, 736 S.W.2d at 634, 634–36. However, in order to foreclose on the property, the contractual lien must be valid, and creation of a contractual lien requires "evidence apparent from the language of the agreement that the parties intended to create a lien." *Id.* at 634. Whether such language exists in a specific instance will require a review of the agreement in full and construction of that agreement, which this office cannot undertake. *See* Tex. Att'y Gen. Op. No. GA-0594 (2008) at 4 n.5 (observing that because "[i]nstruments such as . . . restrictive covenants are subject to the general rules of contract construction . . . it may not be possible to construe them in an attorney general opinion").

In your fifth question, you ask whether "the enforcement and penalty provisions in Chapter 202 of the Texas Property Code apply to violations of the bylaws or rules of a private for-profit club." Request Letter at 2; *see* TEX. PROP. CODE ANN. §§ 202.001 et. seq. (West 2007) (titled "Construction and Enforcement of Restrictive Covenants"). You specifically note subsection

202.004(c), which allows a court to "assess civil damages for the violation of a restrictive covenant in an amount not to exceed $200 for each day of the violation." TEX. PROP. CODE ANN. § 202.004(c) (West 2007). The term "restrictive covenant" is defined for purposes of chapter 202 as "any covenant, condition, or restriction contained in a dedicatory instrument, whether mandatory, prohibitive, permissive, or administrative." *Id.* § 202.001(4). The term "dedicatory instrument" is defined as "each governing instrument covering the establishment, maintenance, and operation of a residential subdivision . . . , includ[ing] a declaration or similar instrument subjecting real property to restrictive covenants, bylaws, or similar instruments governing the administration or operation of a property owners' association." *Id.* § 202.001(1). The answer to your question will require construction of the original declaration of covenants, conditions, and restrictions along with the bylaws and rules that you describe, and it will require a factual inquiry to determine whether they qualify as restrictions contained in a dedicatory instrument.

You next ask whether a "restrictive covenant that imposes an uncapped fee on each new buyer due upon each subsequent transfer of the burdened property" is an unreasonable restraint on alienation. Request Letter at 2. We have been unable to find any Texas case law addressing whether the transfer fees that you describe are in violation of this doctrine. However, we can advise that in other contexts "Texas courts have looked to the Restatement [of Property] to determine issues regarding alleged restraints on alienation." *Navasota Res., L.P. v. First Source Tex., Inc.*, 249 S.W.3d 526, 537 (Tex. App.—Waco 2008, pet. denied); *see Sonny Arnold, Inc. v. Sentry Sav. Ass'n,* 633 S.W.2d 811, 813–15 (Tex. 1982). As explained in the Restatement, "[a]n otherwise valid servitude is valid even if it indirectly restrains alienation . . . by reducing the amount realizable by the owner on sale or other transfer of the property, or by otherwise reducing the value of the property." RESTATEMENT (THIRD) OF PROP.: SERVITUDES § 3.5 (2010). The comments further explain:

> Fees imposed on the transfer of units in a development are generally valid under the rule stated in this section. Fees to cover the administrative costs entailed by a transfer of ownership, or occupancy, and education of new members are justified, as are fees designed to discourage speculation in units and encourage owner occupancy. . . . So long as there is some rational justification for the imposition of such fees, they are not invalid as indirect restraints on alienation . . . .

*Id.* cmt. c. We do note, however, that under some circumstances, such transfer fees may be deemed unconscionable by a court even where they do not amount to an impermissible restraint on alienation. *Id.* Whether a court would determine the transfer fee at issue unconscionable would depend on the amount of the fee imposed, the purpose of the fee and whether it has a rational justification. Such a determination would require a factual inquiry that this office cannot undertake.

Your final question asks whether restrictive covenants are invalid if they "require a membership fee paid to a private third-party for which there is no mechanism for the owner of the burdened property to get notice of, have control over use of, or limit increases in that membership

fee invalid." Request Letter at 2. Texas courts have upheld the right of property associations to change fee assessments after a restriction is originally recorded when the method for changing the fee is clearly outlined in the deed restriction or documents therein referenced. *See, e.g., Samms v. Autumn Run Cmty. Improvement Ass'n*, 23 S.W.3d 398, 402–03 (Tex. App.—Houston [1st Dist.] 2000, pet. denied) (finding deed restrictions gave a property association the right to change assessments every year). However, whether a specific owner received notice of the existence of a restrictive covenant will involve questions of fact that this office cannot decide. *Simms v. Lakewood Village Prop. Owners' Ass'n, Inc.*, 895 S.W.2d 779, 788 (Tex. App.—Corpus Christi 1995, no writ) (explaining that notice of a restrictive covenant is a fact question). We can advise that in order for a restrictive covenant to be enforceable, the grantee must have had notice, either actual or constructive, of the restriction when the property was purchased. *Davis v. Huey*, 620 S.W.2d 561, 567 (Tex. 1981).

## S U M M A R Y

A covenant that does not touch and concern the land will not run with the land, and foreclosure on a subsequent purchaser's land based on a lien that resulted from a personal covenant would be prohibited.

Creation of a valid contractual lien, upon which foreclosure is proper, requires evidence apparent from the language of the agreement that the parties intended to create a lien.

In order for a restrictive covenant to be enforceable, the grantee must have had notice, either actual or constructive, of the restriction when the property was purchased.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

DAVID J. SCHENCK
Deputy Attorney General for Legal Counsel

JASON BOATRIGHT
Chair, Opinion Committee

Virginia K. Hoelscher
Assistant Attorney General, Opinion Committee