NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

Nos. 22-3019 and 22-3020

———————

In re:  RGN-GROUP HOLDINGS, LLC, et al.,
                                    Appellants

———————

Appeal from the United States District Court
for the District of Delaware
(D.C. Civil Action Nos. 1-21-cv-01430 and 1-21-cv-01476)
District Judge:  Honorable Richard G. Andrews

———————

Argued on November 2, 2023

Before: JORDAN, ROTH and AMBRO, <u>Circuit Judges</u>

(Opinion Filed: March 14, 2024)

John Bash  **(Argued)**
Quinn Emanuel Urquhart & Sullivan, LLP
300 W 6th Street
Suite 2010
Austin, TX 78701

Daniel C. Posner
Quinn Emanuel Urquhart & Sullivan, LLP
865 S Figueroa Street
10th Floor
Los Angeles, CA 90017

Eric W. Pinker
Lynn Pinker Hurst & Schwegmann, LLP
2100 Ross Avenue
Suite 2700
Dallas, TX 75201

Ricardo Palacio
Ashby & Geddes, P.A.
500 Delaware Avenue
8th Floor,  P.O. Box 1150
Wilmington, DE 19899

                Counsel for Appellants


Nicole A. Saharsky  **(Argued)**
Minh Nguyen-Dang
Mayer Brown LLP
1999 K Street NW
Washington, DC 20006

Michael P. Lennon
Charles S. Kelley, Jr.
Susan L. Alkadri
Mayer Brown LLP
700 Louisiana Street
Suite 3400
Houston, TX 77002


Bryan J. Hall
Chipman Brown Cicero & Cole
1313 N Market Street
Suite 5400
Wilmington, DE 19801


Jeffrey M. Scott
Archer & Greiner, P.C.
Three Logan Square
1717 Arch Street
Suite 3500
Philadelphia, PA 19103

                Counsel for Appellee

**AMBRO**, <u>Circuit Judge</u>

Under Texas contract law, is an assignor of a contract that is later amended without its consent liable for its assignee's breach of a new obligation in the amendment? We answer no. Texas, following hornbook law, requires mutual assent before holding a party liable for breach of contract. If an assignor did not consent to an amendment, we believe Texas would not hold it liable for a breach of that amendment.

Let's step back and look at the dispute. First, the parties: on one side we have entities affiliated with Regus Corporation ("Regus"). It provides temporary office space to professionals – think WeWork without the marketing campaign. On the other side, we have Teachers Insurance and Annuity Association of America ("Landlord"), an investment manager that offers space in commercial office buildings.

Second, the facts. For more than a decade, a Regus entity – specifically, appellant H-Work, LLC ("Old Tenant") – offered space at Three Lincoln Centre in Dallas, Texas, through an office it leased from Landlord. In 2014, Old Tenant assigned its rights and responsibilities under that lease to its corporate sibling, RGN-Dallas IX, LLC ("New Tenant"). The lease Old Tenant assigned (including seven amendments entered into

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

before the assignment, the "Three Lincoln Centre Lease") expired by its terms in 2019. After the assignment, New Tenant and Landlord amended the Three Lincoln Centre Lease twice more. Among other things, the amended lease contemplated New Tenant moving from Three Lincoln Centre to One Lincoln Centre, a different building in the Lincoln Centre complex. Old Tenant was not a party to either amendment. (So we refer to the Three Lincoln Centre Lease, as amended solely by New Tenant and Landlord, as the "One Lincoln Centre Lease.")

In 2020, Landlord evicted New Tenant for nonpayment of rent. Landlord sought to recover for New Tenant's breach of the One Lincoln Centre Lease[1] by filing a claim against Old Tenant in the latter's COVID-induced bankruptcy filed in the Bankruptcy Court for the District Court of Delaware, which is how this Texas contract dispute came before us. The Bankruptcy Court held a three-day trial and ruled that Old Tenant was liable for New Tenant's breach of the One Lincoln Centre Lease. The District Court affirmed, and Old Tenant appeals to us.

## I.      BACKGROUND

### Regus

Old Tenant and New Tenant are both entities owned by Regus. Its business model involves entering into long-term leases of commercial office space with landlords and

---

[1] Before the Bankruptcy Court, Old Tenant argued that New Tenant did not breach the One Lincoln Centre Lease. That Court held that New Tenant did so. Old Tenant appealed the holding to the District Court, which affirmed the Bankruptcy Court. Old Tenant does not appeal that holding to us, and so this opinion follows the Bankruptcy and District Courts' holding that New Tenant breached the One Lincoln Centre Lease.

then using the leased space to offer short-term, low-commitment occupancy agreements to professionals who need office space.  When things are working, Regus makes more from the occupancy agreements for a property than it spends on its lease.  Pressured by the COVID pandemic and meteoric rise of remote work, certain Regus affiliates (including Old Tenant, but not New Tenant) filed for bankruptcy in the District of Delaware in mid-2020.

## The Lease

In 1987, two non-parties entered into a lease for office space in the Lincoln Centre complex in Dallas, Texas.  By 2003 Old Tenant was the tenant under that lease, and by 2007 Landlord was the lessor.  Including the amendment they made to it in 2012, we have the Three Lincoln Centre Lease, which (as noted above) expired in July 2019.  In 2014, New Tenant and Old Tenant agreed to assign Old Tenant's rights and responsibilities under the Three Lincoln Centre Lease to New Tenant.  Because New Tenant and Old Tenant are under common control[2], the Three Lincoln Centre Lease did not require Landlord's consent for the assignment – which was not requested.  Old Tenant nonetheless provided notice of the assignment to Landlord but did not request or receive a release for its obligations under the Three Lincoln Centre Lease from Landlord.

Before the Three Lincoln Centre Lease expired, New Tenant and Landlord extended it by a year with an eighth amendment so they could finish negotiating a substantial modification to their business deal.  In December 2019, with negotiations

---

[2] While New Tenant and Old Tenant share a common corporate parent, the record reflects that Old Tenant does not directly or indirectly own New Tenant.

complete, New Tenant and Landlord revised the Three Lincoln Centre Lease by entering into another amendment (the ninth). New Tenant and Landlord were now parties to the One Lincoln Centre Lease.

As noted above, Old Tenant was not a party to this amendment or the One Lincoln Centre Lease, which – like the Three Lincoln Centre Lease – includes a Texas governing law provision.

The later One Lincoln Centre Lease varied significantly from the Three Lincoln Centre Lease. Among other things, it:

- required Landlord to make ready almost 60,000 square feet of new space in One Lincoln Centre (as noted, a different building in the Lincoln Centre complex) for New Tenant, and for New Tenant to abandon the space it leased under the Three Lincoln Centre Lease of around 18,000 square feet;

- extended the lease term by almost 15 years; and

- increased the monthly rent from about $35,000 at the end of the Three Lincoln Centre Lease to approximately $105,000 shortly after the One Lincoln Centre Lease began and about $180,000 in the last year of the One Lincoln Centre Lease.

The Dispute

New Tenant failed to pay timely its October 2020 rent under the One Lincoln Centre Lease; Landlord responded by evicting it. Landlord then filed in Old Tenant's bankruptcy a proof of claim for damages arising from New Tenant's breach of the One Lincoln Centre Lease. Landlord initially claimed approximately $30 million in damages,

but later reduced its claim to about $6 million following application of 11 U.S.C. § 502(b)(6), a Bankruptcy Code provision that caps claims for damages resulting from a breach of a real property lease.

Old Tenant objected to Landlord's claim in Bankruptcy Court for many reasons, including that Old Tenant was not in privity of contract with Landlord on the One Lincoln Centre Lease. After a trial, the Bankruptcy Court sided with Landlord on the issues before us, holding that Old Tenant was liable for New Tenant's breach of the One Lincoln Centre Lease and allowing a significant portion of Landlord's claim. Relevant to this appeal, the Bankruptcy Court concluded that Old Tenant was liable for New Tenant's breach of the One Lincoln Centre Lease because, "[u]nder Texas law, an assignor's obligation will survive assignment" absent a release. App. 1251-53. The District Court affirmed the Bankruptcy Court's decision, holding that (a) the terms of the Three Lincoln Centre Lease preserved Old Tenant's liability and (b) a tenant-assignor remains liable for its assigned lease under Texas law unless it obtains a release from its lessor. Old Tenant appeals the District Court's holding that it is liable for damages stemming from New Tenant's breach of the One Lincoln Centre Lease. [3]

## II. JURISDICTION AND STANDARD OF REVIEW

The District Court had subject-matter jurisdiction under 28 U.S.C. § 158(a). We have jurisdiction under 28 U.S.C. §§ 158(d) and 1291.

---

[3] In the alternative, Old Tenant also argues that, even if it is liable for New Tenant's breach of the One Lincoln Centre Lease, it is not liable for a portion of Landlord's alleged damages. Because we hold that Old Tenant is not liable for New Tenant's breach, we do not address that issue.

7

We are considering the District Court's disposition of an appeal from a decision of the Bankruptcy Court. We therefore review legal determinations *de novo* and factual determinations for clear error. *In re Bocchino*, 794 F.3d 376, 379-80 (3d Cir. 2015).

When answering questions of state law, we defer to the state's supreme court, ideally by following clearly on-point decisions that resolve the dispute and alternatively by making our best prediction as to how that court would rule. *In re Energy Future Holdings Corp.*, 842 F.3d 247, 253-54 (3d Cir. 2016) (analyzing New York contract law to resolve appeal grounded in bankruptcy jurisdiction).

## III. DISCUSSION

### Contractual Language

Landlord and our dissenting colleague claim that this is a simple case, easily resolved by the text of the Three Lincoln Centre Lease. They rely on the following language: "No assignment or subletting, whether or not with Landlord's consent, shall ever relieve [Old] Tenant of any liability hereunder." App. 1724 (Three Lincoln Centre Lease § 16(c)).

We agree with the dissent that "[t]he plain language of the Lease thus covers past, present, and future liability, including liability flowing from Amendments to the Lease." Dissent at 1. But we disagree that this resolves the dispute. The cited language prevents an assignment from "reliev[ing]" Old Tenant from "any liability." [4] It does not impose

---

[4] And Old Tenant explicitly waived any argument that its assignment of the Three Lincoln Centre Lease to New Tenant excused Old Tenant's liabilities thereunder; it hangs

8

any additional liability on Old Tenant.[5]  So this provision is not relevant if Old Tenant is not liable on the One Lincoln Centre Lease in the first place. We turn to that the question.

<u>No On-Point Cases</u>

The parties have not presented, and we have not discovered, any cases where the Supreme Court of Texas addressed the precise issue here (*i.e.*, whether a contract assignor is *automatically* liable for breaches of amendments to the assigned contract when the assignor was not a party to those amendments).  The easiest way to resolve this question would be with clear rulings from Texas courts that persuade us of the Supreme Court of Texas's view on the determinative issue.  While neither party claims to provide a factually on-point case, both Landlord and Old Tenant offer Texas appellate decisions they claim provide by analogy clear rules that guide us to their preferred outcome.  On review, however, no cited case resolves this dispute.

Landlord claims that Supreme Court of Texas's ruling in *Seagull Energy E & P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342 (Tex. 2006), supports its position.  It held that,

> [g]enerally speaking, a party cannot escape its obligations under a contract merely by assigning the contract to a third party.  Thus, as a general rule, a party who assigns its contractual rights and duties to a third party remains liable unless expressly or impliedly released by the other party to the contract.

---

its hat on the argument that it was never liable on the One Lincoln Centre Lease.  Old Tenant Reply Br. 10-11.

[5] The dissent appears to presume that New Tenant is liable for the One Lincoln Center Lease and would rule for Landlord primarily because it never released New Tenant from those purported liabilities.

9

*Id.* at 346-47 (citations omitted)*.* But *Seagull* dealt with an assignor's liability on an unamended assigned contract. *Id.* at 344-45. Because it did not involve an amendment, and because its ruling is generally couched rather than absolute, we doubt the Supreme Court of Texas would afford *Seagull* significant weight were it considering this case.

In contrast, Old Tenant relies on *NextEra Retail of Tex., LP v. Inv's. Warranty of Am., Inc.*, 418 S.W3d 222, 226 (Tex. App – Houston 2013), for the proposition that an "assignor of a contract remains liable for the obligations he originally assumed." Old Tenant focuses on the word "originally" and concludes that *NextEra* holds an assignor is only liable for the contract as assigned, not for any post-assignment modifications. However, the scope of an assignor's post-assignment liability was never discussed in *NextEra*, which dealt with a purported assignee's liability. *Id* at 224-25*.* Because it, like *Seagull*, did not involve an assignor's liability on an amendment to an assigned contract, we do not think the Supreme Court of Texas would find it determinative.

Both parties cite to other Texas cases as well, and with one exception those cases do not analyze liability for post-assignment modifications. The exception is *Dave Summers Realtors, Inc. v. Astro Leasing, Inc.*, 603 S.W.2d 301 (Tex. Civ. App. – Beaumont 1980), but it is a one-page affirmance that does not clearly explain its rationale.[6] Therefore, we do not believe Texas's highest court would lean on it to decide our case.

---

[6] Landlord also argued that *Kirby v. Tips*, 67 S.W.2d 661 (Tex. Civ. App. – Galveston 1934), supports its position because it shows that assignors are liable for post-assignment increases to their liability. But *Kirby* is easily distinguished. The assignor's liability

Assignment Liability Under Texas Law

Looking more generally to Texas assignment law, we predict that the Supreme Court of Texas would not bind an assignor to a contract amendment to which it did not assent. In the absence of on-point decisions from a state supreme court, we give predictive value to reasoned opinions by state intermediate appellate courts. *See, e.g.*, *Budget Rent-A-Car Sys., Inc. v. Chappell*, 407 F.3d 166, 174 (3d Cir. 2005).

Texas appellate courts have consistently held that an assignor's liability on an assigned lease results from the assignor's privity of contract with its initial contract counterparty (here, Landlord). *See, e.g.*, *718 Assocs., Ltd. v. Sunwest N.O.P., Inc*, 1 S.W.3d 355, 361 (Tex. App – Waco 1999); *Interstate Fire Ins. Co. v. First Tape, Inc.,* 817 S.W.2d 142, 145 (Tex. App – Houston 1991). This suggests that the Supreme Court of Texas would reach the same conclusion. Moreover, the logic of other decisions by that Court support this conclusion. In *Tawes v. Barnes*, 340 S.W.3d 419, 429 (Tex. 2011), the Texas Supreme Court held that there are only two ways whereby a tenant could be held liable for nonpayment of rent: privity of estate[7] and privity of contract,

---

increased there per a revaluation mechanic that was in the assigned contract; there was no relevant post-assignment amendment. *Id.* at 665-67.

[7] Parties are in privity of estate when they have "a mutual . . . relationship to the same rights of property," such as when one party owns a property and another has the right to exploit that same property (*e.g.,* landlords and oil exploration companies). *MJR Oil & Gas 2001 LLC v. AriesOne, LP*, 558 S.W.3d 692, 700 (Tex App. – Texarkana 2018) (citing *Westland Oil Dev. Corp. v. Gulf Oil Corp.*, 637 S.W.2d 903, 910-11 (Tex. 1982)). The dissent claims that "it is difficult to imagine how Old Tenant and New Tenant could maintain a more deeply mutual relationship to a piece of property." Dissent at 4. We disagree. Old Tenant could have subleased the property from New Tenant, for example. Nothing in the record suggests that Old Tenant has any legal rights to New Tenant's

while in *Seagull* that Court stated that contract assignors "generally" remain liable on their contracts. 207 S.W.3d at 346-47. Combining *Seagull* with *Tawes* and the conclusion of Texas intermediate courts that a lease assignment destroys privity of estate between the assignor and the landlord, *see, e.g., 718 Assocs.*, 1 S.W.3d at 361; *Interstate Fire*, 817 S.W.2d at 145; *Twelve Oaks Tower I, Ltd. v. Premier Allergy, Inc.*, 938 S.W.2d 102, 114 (Tex. App. – Houston 1996), we are left with only privity of contract as a basis for a landlord to claim a tenant-assignor is liable for breach of an assigned lease.

To resolve this appeal, then, we ask whether the Supreme Court of Texas would hold Old Tenant in privity of contract with Landlord on the One Lincoln Centre Lease. Our prediction is no.

Landlord Did Not Establish Mutual Assent

Texas, following hornbook law, requires mutual assent to establish privity of contract. *Baylor Univ. v. Sonnichsen,* 221 S.W.3d 632, 635 (Tex. 2007). This requirement extends to contract modifications. *Hathaway v. Gen. Mills, Inc.*, 711 S.W.2d 227, 228 (Tex. 1986); *Miller v. McCarty*, 323 S.W.3d 612, 615 (Tex. App. – Texarkana 2010). The gold standard for consent is a signed writing. *Baylor*, 221 S.W.3d at 635. Unfortunately for Landlord, Old Tenant didn't sign the One Lincoln Centre Lease. To prevail, then, Landlord will need to establish in some other way that Old Tenant consented to be bound by the One Lincoln Centre Lease.

---

leased property whatsoever. And the dissent provides no cases for the proposition that common corporate control is sufficient to establish privity of estate.

Landlord first contends that Old Tenant consented to the One Lincoln Centre Lease because it knew New Tenant was executing it and did not object. It claims that a party's "knowledge" of an amendment to another's contract can bind it to that amendment. The cases Landlord cites for that proposition – *Whitten v. Metro Bank of Dallas*, 556 S.W.2d 383, 386 (Tex. Civ. App. – Waco 1977); *U.S. Fid. and Guar. Co. v. Braspetro Oil Servs. Co.*, 369 F.3d 34, 61 (2d Cir. 2004) – are from surety law, which does not apply here. [8] It provides no cases where Texas courts have found parties liable based on privity of contract resulting from assent by silence, and we doubt the Supreme Court of Texas would so hold here.

Landlord next claims that we should deem Old Tenant consented to the One Lincoln Centre Lease as a matter of law through direct benefit estoppel following *In re*

---

[8] Landlord claims, and the dissent agrees, that an assignor's liability on an assigned contract flows through surety, not contract law. But the two cases they cite are not on point. First, they cite *Twelve Oaks Tower I, Ltd. v. Premier Allergy, Inc.*, 938 S.W.2d 102, 116 (Tex. App. – Houston 1996), which specifically held that an assignor's "continuing obligation . . . [is] based on privity of contract." *Twelve Oaks* explains that tenant-assignors are like guarantors because they are responsible for the obligations of the lease but are not entitled to its benefits. *Id.* at 116. Its discussion does not suggest that suretyship principles govern the relationship between a landlord and a tenant-assignor.

Their second case, decided nearly a century ago, *King v. Grubbs*, 275 S.W. 855, 857 (Tex. Civ. App – El Paso 1925), said that an assignor's remaining liability is "in the nature of suretyship." But that wasn't a general statement that surety law governed the relationship: it was to remind that the landlord could not obtain double satisfaction from both the assignor and assignee. *Id.* And *King* didn't provide any precedent or caselaw to suggest that suretyship governed the assignor-landlord relationship. Moreover, *King* cites, and appears to base its ruling on, *Cauble v. Hanson*, 224 S.W. 922, 923 (Tex. Civ. App. – El Paso 1920), which holds that an assignor's continuing liability is based on privity of contract.

13

*Weekley Homes, L.P.*, 180 S.W.3d 127 (Tex. 2005). But, under Texas law, "estoppel is a defensive theory, not a theory by which a signatory plaintiff [here, Landlord] may hold a nonsignatory defendant [here, Old Tenant] to the terms of a contract the nonsignatory defendant is not seeking to enforce." *Carlile Bancshares, Inc. v. Armstrong*, 2014 WL 3891658, at *8 (Tex. App. – Fort Worth 2014) (citing *Perry Homes v. Cull*, 258 S.W.3d 580, 593 (Tex. 2008), cert. denied, 855 U.S. 1103 (2009)).

So we return to our theme. Because Old Tenant did not sign the One Lincoln Centre Lease, and Landlord does not persuade us that, under Texas law, Old Tenant otherwise consented to be bound by the One Lincoln Centre Lease, we conclude that Old Tenant is not in privity of contract on, and therefore not bound by, it.

We Are Unpersuaded by Landlord's Policy Arguments

Landlord and the dissent argue that finding for Old Tenant would be bad policy. Landlord misstates Old Tenant's position and asserts that, should Old Tenant prevail, any lease assignor could "unilaterally divest itself from any further obligations" under the assigned lease "simply by having the assignee make any changes to the lease, no matter how small." Landlord Br. 43. But Old Tenant agrees it remained liable on the Three Lincoln Centre Lease post-assignment: it disputes only its liability on the One Lincoln Centre Lease, which was entered into by New Tenant after Old Tenant assigned to it the Three Lincoln Centre Lease. *See, e.g.*, Old Tenant Br. 15-17; Old Tenant Reply Br. 2, 10. Ruling for Old Tenant would not allow tenants to "unilaterally divest" their initial obligations under an assigned lease, but it would prevent assignees and landlords from increasing an assignor's obligations without its consent.

14

And the dissent claims that our ruling will discourage landlords from working with tenants who want to assign leases. It does not explain why it thinks so, and we do not foresee that consequence. Our opinion only holds that a landlord and assignee cannot amend a lease to increase the assignor's liability unless it consents. Nothing in this ruling prohibits an assignor from guaranteeing or otherwise supporting an amendment to an assigned lease or reduces an assignor's liability on the lease as-assigned. So we do not agree with the dissent's claim that this ruling "judgment-proofs" sophisticated tenants. Dissent at 5-6.

In sum, we believe that the Supreme Court of Texas would hold that an assignor's liability on an assigned lease stems from privity of contract, which requires mutual consent. With no basis in Texas law provided by Landlord to establish that Old Tenant consented to be bound by the One Lincoln Centre Lease, and given that the Three Lincoln Centre Lease's terms do not make Old Tenant liable for breaches of the One Lincoln Centre Lease, we conclude that the Supreme Court of Texas would not hold Old Tenant liable for New Tenant's breach of the One Lincoln Centre Lease.

Landlord Forfeited Its Tort Theory

Only on appeal does Landlord argue in the alternative that it can also be awarded those reliance damages in tort directly from New Tenant. Specifically, it claims that it can recover certain reliance damages related to the breach of the One Lincoln Centre Lease from Old Tenant under a negligent misrepresentation theory. But we do not see this argument anywhere in Landlord's papers at the Bankruptcy Court or District Court.

15

Accordingly, Landlord forfeited this contention. *Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 834-35 (3d Cir. 2011).

We may excuse forfeiture, but are disinclined to do so when the forfeited argument requires factual development that could have been accomplished in the trial court if raised on time. *Id.* Here, negligent misrepresentation requires several factual findings,[9] none of which were sought in the three-day trial at the Bankruptcy Court or discussed in its post-trial findings of fact. It would not be fair to Old Tenant to remand for factfinding given Landlord's failure to raise and develop timely this tort argument.

<u>Landlord's Corporate Family Intimations</u>

Before closing, we address Landlord's somewhat confusing position on the relationship between Old Tenant and New Tenant. At oral argument, Landlord explicitly disclaimed any veil-piercing argument. Tr. 15:15-16. At the same time, its briefing clearly and repeatedly hinted that there was something untoward about Old Tenant's assignment of the Three Lincoln Centre Lease to New Tenant. *See, e.g.*, Landlord Br. 41 (Old Tenant "unliterally assigned the [Three Lincoln Center Lease] to [New Tenant], a close corporate affiliate under common control . . . , solely to achieve its desired corporate policy.").

---

[9] Specifically, Texas negligent misrepresentation requires findings that:
- the defendant made a representation in the course of its business;
- the representation contained false information;
- the defendant did not exercise reasonable care in either obtaining the information or communicating it to the plaintiff;
- the plaintiff suffered pecuniary loss from its reliance on the representation; and
- that reliance was justifiable.

*See, e.g., Fed. Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991).

16

We see nothing untoward about Old Tenant's behavior. The Three Lincoln Centre Lease, which Landlord agreed to, specifically allowed Old Tenant to assign it to any entity under common control with Old Tenant. App. 1827 § 19(iii). It was not wrong for Old Tenant to exercise its contractual assignment right.

Further, Landlord entered into the One Lincoln Centre Lease with New Tenant, not Old Tenant. If Landlord wanted Old Tenant to be liable on the One Lincoln Centre Lease, it could have required Old Tenant to agree to be bound by it or provide a guaranty.[10] Landlord did not have to sign the One Lincoln Centre Lease without security from Old Tenant – it could have walked away. It didn't. Its desire for a better deal than the one it signed does not move us. *See, e.g.*, *Great Am. Ins. Co. v. Primo*, 512 S.W.3d 890, 893 (Tex. 2017) (Texas interprets contracts according to their "plain language" instead of "rewrit[ing] private agreements" by deferring to any party's after-the-fact claims about its understanding or intent.).[11]

---

[10] Indeed, Landlord required a non-party Regus entity to guarantee partially the One Lincoln Centre Lease. App. 2008-12.

To the extent that Landlord did not request a guaranty from or otherwise require Old Tenant to confirm its liability on the One Lincoln Center Lease because it presumed that Old Tenant would remain liable, as the dissent appears to suggest, we have little sympathy. The One Lincoln Center Lease is a multimillion dollar contract, and Landlord is commercially sophisticated.

[11] This case illustrates the wisdom of that principle. The dissent suggests that this decision is wrong because it violates Landlord's expectation that Old Tenant would be liable on the One Lincoln Centre Lease. But it appears that Old Tenant expected it wouldn't be. So, no matter which way we rule, someone's expectations will be dashed. And it is our role to enforce the parties' agreement. *Baylor*, 221 S.W.3d at 635. While the parties did not agree on their expectations, they did agree on the terms of the leases.

And it is clear that corporate separateness is the law in Texas. *See, e.g.*, *Lucas v. Tex. Indus., Inc.*, 696 S.W.2d 372, 374-75 (Tex. 1984); *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. and Rsch. Corp.*, 299 S.W.3d 106, 116 (Tex. 2009); *R&M Mixed Beverage Consultants, Inc. v. Safe Harbor Benefits, Inc.*, 578 S.W.3d 218, 229 (Tex. App. – El Paso 2019). Courts shouldn't "hold a corporation liable for the obligations of its subsidiary[12] except where it appears the corporate [form] is being used as a sham to perpetuate a fraud." *Lucas*, 696 S.W.2d at 374. Moreover, to establish "exceptional circumstances" sufficient to disregard corporate separateness, "[t]here must be something more than mere unity of financial interest, ownership[,] and control." *Id.* Landlord's arguments on this issue sound like the "mere unity of financial interest, ownership[,] and control" that is, under Texas law, insufficient to disregard the corporate distinction between Old Tenant and New Tenant. While the dissent suggests that New Tenant's connection to Old Tenant should change our analysis, it cites no cases for that argument. But Supreme Court of Texas precedent goes the other way. That Court stated that "[c]reation of affiliated corporations to limit liability while pursuing common goals lies firmly within the law and is commonplace . . . . [A] legitimate purpose for forming a corporation is to limit individual liability for the corporation's obligations." *SSP Partners v. Gladstrong Invs. (USA) Corp.*, 275 S.W.3d 444, 455 (Tex. 2008).

It does not "contravene[] fundamental fairness," Dissent at 6, to hold Landlord to the terms of its bargain. That may be the root of our disagreement with our dissenting

---

[12] As noted above, Old Tenant does not directly or indirectly own New Tenant.

18

colleague: she views our decision as unfair, a victory for Old Tenant through a corporate shell-game with no purpose other than to minimize its liability. But we see the One Lincoln Centre Lease as the result of a negotiation between sophisticated parties, and Old Tenant's lack of liability on the One Lincoln Center Lease simply as the business deal Regus and Landlord reached.

We have considered Landlord's other arguments and are not persuaded.

\*\*\*\*\*

We therefore reverse the District Court's decision as to Old Tenant's liability for New Tenant's breach of the One Lincoln Centre Lease and remand to that Court with instructions to remand to the Bankruptcy Court to disallow Landlord's claim.

19

**ROTH**, *Circuit Judge*, dissenting:

The majority concedes that Texas law does not address the precise issue here of assignor liability. I agree that there is no exact precedent. Still, we must follow Texas case law on the interpretation of contracts. That is exactly why we must confine our decision to the text of the Lease and the facts of this case. Here, the Lease plainly imposes liability. Instead of ruling narrowly, however, the majority creates a new rule of Texas contract law. It then misapplies that new rule. For these reasons, I respectfully dissent.

Texas courts interpret contracts according to their plain language.[1] Under the Lease, "[n]o assignment or subletting, whether or not with Landlord's consent, shall *ever* relieve Tenant of *any liability* hereunder."[2] The text of the Lease extends Old Tenant's obligations to "any liability" "ever", and not merely to liability that existed in the past at the time of assignment. The plain language of the Lease thus covers past, present, and future liability, including liability flowing from Amendments to the Lease. Moreover, the Lease sets forth the ways in which Landlord can respond to a proposed assignment.[3] Under those provisions, Old Tenant may be relieved of liability only if Landlord releases

---

[1] *Great Am. Ins. Co. v. Primo*, 512 S.W.3d 890, 893 (Tex. 2017).

[2] App. 1724 (Lease § 16(c)) (emphasis added).

[3] Under the Lease, Landlord can (1) approve the assignment, but "no approval of an assignment . . . shall relieve Tenant of any liability," (2) "negotiate directly" a new lease with the proposed assignee and "upon execution of [that] lease, . . . terminate this Lease," or (3) "refuse[] . . . [the] assignment[.]" App. 1722–24.

Old Tenant by terminating the existing Lease and entering into a new lease. That did not happen here. Old Tenant never sought or obtained a release from its obligations, so it remains liable.

The majority overlooks the plain text of the Lease on the theory that this provision from the "Three Lincoln Center Lease" is "not relevant if Old Tenant is not liable on the One Lincoln Center Lease in the first place."[4] That theory would be persuasive if the "One Lincoln Center Lease" and "Three Lincoln Center Lease" were two different leases. But they are not. As the District Court correctly found, the lease amendments do not constitute a new contract or novation,[5] and that conclusion was not clear error.[6] Ultimately, two federal courts—the Bankruptcy Court and the District Court—rightly found that both the plain text of the Lease and Texas law point to the same result: liability for Old Tenant.

Rather than stop with the text of the lease, the majority searches for an answer to a global question of Texas law that this case does not require us to decide: "whether a contract assignor is *automatically* liable for breaches of amendments to the assigned contract even when the assignor was not a party to the amendments."[7] The majority admits that it can find no answer from the Texas Supreme Court. Rather than narrow its

---

[4] Maj. Op. at 10.
[5] *In re RGN-Group Holdings, LLC*, 631 F.Supp.3d 218, 231–32 (D. Del. 2022). Texas courts should not presume releases or novations simply because an assignee agreed to deal directly with a landlord. *Chastain v. Cooper & Reed*, 257 S.W.2d 422, 424 (Tex. 1953). In any event, H-Work forfeited any such argument by failing to raise it in the courts below.
[6] *Chastain*, 257 S.W.2d at 424 (reviewing the existence of a novation or release from liability as a question of fact reviewed for clear error).
[7] Maj. Op. at 11 (emphasis in original).

2

focus to the facts before it, however, the majority decides this case at a high level of generality. It does so using the truism that "Texas, following hornbook law, requires mutual assent to establish privity of contract."[8] On this basic point, I agree. The problem is that the majority's analysis starts and stops at the hornbook.

To start, it is unclear why the majority picks this principle rather than any other equally applicable principle of contract law. After all, it is hornbook law in Texas that "a party who assigns its contractual rights and duties to a third party remains liable unless expressly or impliedly released by the other party to the contract."[9] It is also hornbook law that tenant-assignors remain liable for contract changes that benefit them, as long as they know about those changes or consent to them.[10] These settled doctrines of Texas

---

[8] Maj. Op. at 14.

[9] *Seagull Energy E & P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 347 (Tex. 2006). The majority dismisses the rule from *Seagull* because it dealt with an assignor's liability on an unamended contract. While *Seagull* did not involve an alteration to a lease, *Kirby* did. *Kirby v. Tips*, 67 S.W.2d 661 (Tex. Civ. App. – Galveston 1934). There, a lease agreement provided that the rent would be re-evaluated post-assignment. After assignment, the rent increased and the assignee breached. Even though they were not party to the rent increase, the tenant remained liable. Here, Amendment Seven to the Lease likewise contemplates future alterations that serve the business objectives of Regus. In particular, it expressly provides that the tenant may unilaterally extend the term of the lease and expand the premises. App. 1856, 1864.

[10] In Texas, a tenant-assignor becomes a "surety or guarantor for the assignee." *Twelve Oaks Tower I, Ltd. v. Premier Allergy, Inc.*, 938 S.W.2d 102, 116 (Tex. App. – Houston 1996); *see also King v. Grubbs*, 275 S.W. 855, 857 (Tex. Civ. App. – El Paso 1925) ("The liability of the original lessees, after the assignment, was in the [n]ature of surety for the assignee. The original lessees and the assignee were both liable to the lessor[.]"). Under surety law, the tenant-assignor remains liable even when the principal materially changes the obligations unless the changes were made "without the knowledge or consent of the surety[.]" *Fidelity & Deposit Co. of Md. v. Kelsay Lumber Co.*, 29 S.W.2d 1052, 1056 (Tex. Comm'n App. 1930, judgm't adopted).

contract law favor Old Tenant and are no less relevant to this case than the law cherry-picked by the majority.

The majority rests on *Tawes v. Barnes*, which held that tenants may be liable for nonpayment of rent only through privity of estate or privity of contract.[11] The majority then extrapolates from several intermediate state court decisions to conclude that Old Tenant and Landlord shared neither privity of estate nor privity of contract.

Even if the majority's rule is correct, it applies this rule incorrectly. First, parties share privity of estate when they have a "mutual . . . relationship to the same rights of property."[12] The majority cites three intermediate state court cases to suggest that a lease assignment in Texas categorically destroys privity of estate between a landlord and tenant-assignor.[13] Unlike this case, none of those cases involve a shell corporation that exists only on paper to hold a lease for its corporate sibling—a corporate sibling that, in reality, continues to occupy and exploit the leased premises. Here, it is difficult to imagine how Old Tenant and New Tenant could maintain a more deeply mutual relationship to a piece of property.

---

[11] *Tawes v. Barnes*, 340 S.W.3d 419, 429 (Tex. 2011) ("Liability to . . . [a] lessor for the payment of rent or the performance of other lease covenants may arise from either privity of contract or privity of estate.").

[12] *MJR Oil & Gas 2001 LLC v. AriesOne, LP*, 558 S.W.3d 692, 700 (Tex App. – Texarkana 2018).

[13] All of these cases involve assignments between unrelated parties. *See, e.g., 718 Assocs., Ltd. v. Sunwest N.O.P., Inc.*, 1 S.W.3d 355, 361 (Tex. App. – Waco 1999); *Interstate Fire Ins. Co. v. First Tape, Inc.*, 817 S.W.2d 142, 145 (Tex. App. – Houston 1991); *Twelve Oaks*, 938 S.W.2d at 114.

Second, the majority finds no privity of contract because it does not believe Old Tenant consented to the Lease Amendments. In support, it points out that Old Tenant never agreed to the Amendments in writing. However, under a typical lease agreement, the only way for an assignor to be relieved of its obligations—*i.e.*, the way to break privity of contract—is to obtain a release.[14] Here, Old Tenant could have sought a release, but it never did. In any event, this is no typical "assent-by-silence" case in which courts exercise caution before finding parties in privity of contract absent express consent. New Tenant was literally *created* to benefit Old Tenant and their shared corporate parent by holding and amending the Lease. It had no other purpose. The same corporate officer even signed on behalf of Old Tenant and New Tenant in negotiations with Landlord. We can respect corporate separateness without closing our eyes to the reality of this agreement.[15]

The policy implications that would flow from the majority's decision confirm its error. The majority's rule will discourage landlords from accommodating tenants who wish to assign their leases, and it will discourage landlords from working with assignees to adjust certain terms. The rule will also incentivize corporate gamesmanship. The

---

[14] *Seagull*, 207 S.W.3d at 346–47.

[15] The majority complains that Landlord could have required Old Tenant to provide express written consent to the Amendments or a guaranty but did not. That is no reason to deny liability. In fact, the opposite inference is equally plausible: Landlord expected that Old Tenant was *already* liable under the Amended Lease. The fact that a non-party Regus entity partially guaranteed the Amended Lease does not defeat that inference. Parties to contracts routinely seek additional guarantors for financial security—not because there is any doubt about whether the original party remains liable for its obligations.

majority rightly emphasizes that there is nothing untoward about Old Tenant and New Tenant's corporate relationship. However, this rule paves the way for well-resourced corporate parties to judgement-proof themselves from certain lease obligations—even when those agreements expressly state that original tenants cannot use assignments to evade any of their financial obligations, and even when landlords reasonably expect that the original tenant will remain liable.

The majority's decision contravenes the text of the Lease, the expectations of the parties, and fundamental fairness. We need not take such a global and reductive approach to Texas law. Without clear guidance from Texas courts, judicial modesty counsels confining our decision to the facts of this case and the language of this Lease. That is particularly important when interpreting a body of law that is not our own. For these reasons, I respectfully dissent.